348 So.2d 87 (1977)
Jerome P. HALFORD
v.
REPUBLIC UNDERWRITERS INS. CO.
No. 8508.
Court of Appeal of Louisiana, Fourth Circuit.
May 18, 1977.
Rehearing Denied August 1, 1977.
Writ Refused October 26, 1977.
*88 Edward J. Norton, Jr., New Orleans, for plaintiff-appellee.
Mouton, Roy, Carmouche, Hailey, Bivins & McNamara, Lafayette, for defendant-appellant.
Before REDMANN, SCHOTT and MORIAL, JJ.
MORIAL, Judge.
Jerome P. Halford sued Republic Underwriters Insurance Company on a homeowner's insurance policy to determine the full extent of coverage under the policy for losses of personal property incurred in the burglary of his home on March 16, 1974. He also made a claim for $198.40 which was the cost of repairs to the door of his home which had been damaged by the burglars. Plaintiff's total claim for his losses was $5,648.40. The defendant admitted that the policy was in full force and effect on March 16, 1974 and that Section (c) of the policy afforded protection against the theft of unscheduled personal property. However, defendant contended that plaintiff's claim was in excess of the policy limits as to money and jewelry and erred in seeking replacement cost rather than actual cash value, and submitted a draft to plaintiff in the amount of $2,162.02 as full payment of the claim. Plaintiff returned the draft and sued to recover the full amount of his losses, penalties and attorney's fees. Plaintiff alleged that defendant had handled his claim in an arbitrary and capricious manner in violation of LSA-R.S. 22:658.
The trial judge rendered judgment in favor of plaintiff in the amount of $2,525.92, awarded penalties of 12% of $362.98 (excess of judgment over tender) and $700.00 for *89 attorney's fees. Both parties claim the trial judge erred in awarding penalties and attorney's fees. Plaintiff disagrees with the trial judge's interpretation of the policy and valuation of his losses. He asks for an increase in the principal amount of the judgment and a corresponding increase in the penalties and attorney's fees.
The homeowner's policy at issue provided for $10,500.00 coverage of unscheduled personal property under Coverage C. Several limitations were placed on Coverage C under the "Additional Conditions" part of the policy. Section 2b of that part provides:

* * * * * *
"b Under Coverage C, this Company shall not be liable for loss in any one occurrence with respect to the following property for more than:
(1) $100.00 in the aggregate on money, bullion, numismatic property and bank notes;
* * * * * *
(4) $500.00 in the aggregate for loss by theft of jewelry, watches, necklaces, bracelets, gems, precious and semi-precious stones, gold, platinum and furs including articles containing fur which represents its principal value;"

* * * * * *
Upon notification by plaintiff of his losses, defendant retained the services of the General Adjustment Bureau, Inc. (GAB) to adjust plaintiff's claim under the terms of the policy. Plaintiff gave a statement of his losses to Robert Schoener, a GAB adjuster on April 2, 1974 and requested a proof of loss form. Plaintiff could not provide an estimate of the cost of repairs to his door at that time. Plaintiff listed forty-five items as stolen including a TV, radio, other electrical appliances, firearms, jewelry, tools, sweaters, liquor and cash money. Plaintiff repeated his request for a proof of loss form on April 26, 1974. Plaintiff submitted the door repair bill to defendant on May 13, 1974 and again demanded a proof of loss form threatening to sue if he did not immediately receive the form. Plaintiff received a form on May 15. Plaintiff provided defendant with the age and replacement value of each of the stolen items. Defendant rejected plaintiff's proof of loss and submitted a company draft to plaintiff on July 9, 1974 for $2,162.02 as full payment of the claim. The draft itself contained language to the effect that it constituted a full release of the claim. However, a GAB representative stated in an accompanying letter that the language on the draft did not affect plaintiff's right to further pursue his claim by litigation. Plaintiff returned the draft stating that it was totally unacceptable and informed defendant that he was filing suit.
A pre-trial conference was held and the parties stipulated that the replacement values assigned to the items by plaintiff were acceptable to both sides. Defendant offered no evidence at trial refuting these values. There was no stipulation made nor evidence presented as to the actual cash value of the items at the time of the loss. However, at trial, the judge depreciated the values of the majority of the items to reflect their actual cash values. He gave no explanation as to how he arrived at the depreciated figures. The trial judge also recognized both limitations of liability set out hereinabove and reduced the claim in accordance with the provisions of the policy. The trial judge concluded that cuff links are jewelry and losses thereof are subject to the jewelry limitation clause of the policy.
On appeal plaintiff argues that cuff links and a money clip are functional items and are not subject to the jewelry limitation. Plaintiff also argues that the trial court was in error in arbitrarily reducing the value of the lost property without the benefit of evidence or a specific method of valuation set out in the policy.
Plaintiff argues that the trial court's finding that defendant acted in an arbitrary and capricious manner should be affirmed. He argues that the defendant rejected his proof of loss without a reasonable explanation and did not make a payment of the claim within sixty days of the proof of loss in violation of LSA-R.S. 22:658.
*90 We reject plaintiff's argument that cuff links are not jewelry within the meaning of the policy. The Webster's Third New International Dictionary (G & C Merriam Company, Springfield, Massachusetts, 1971) defines jewelry as ornamental pieces made of materials that may or may not be precious, often set with genuine or imitation gems and worn for personal adornment. Cuff links are defined as ornamental devices consisting of two pieces joined by a shank or bar for passing through buttonholes to fasten a cuff. Except for three inexpensive pairs of cuff links, plaintiff's cuff links ranged in value from $175.00 to $375.00 and were made of gold or silver metals. We find that plaintiff's cuff links were correctly categorized as jewelry. We also find that plaintiff's money clip which was faced with a silver dollar was an ornamental piece and subject to the jewelry limitation of the policy.
We also disagree with plaintiff's contention that the policy does not set out a method of valuation for coverage under Section C. The first page of the policy which applies to the entire contract provides:
"In consideration of the provisions and stipulations herein * * *, this Company, for the term shown in the Declarations * * * does insure the Insured named in the Declarations and legal representatives to the extent of the actual cash value of the property at the time of loss, * * *." (emphasis provided)
Pursuant to that language the trial judge was correct in reducing the value of each item from its replacement cost to its actual cash value at the time of the loss.
The final issue before us is whether or not defendant acted arbitrarily and capriciously in its payment of plaintiff's claim. LSA-R.S. 22:658 provides:
"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees."
Plaintiff argues that defendant acted arbitrarily and capriciously in not informing plaintiff of the basis for the company's loss valuation. Plaintiff also contends that he gave a statement of his losses to the adjuster on April 2 and that payment should have been made within sixty days of that date. Plaintiff also argues that defendant did not make a valid tender within the meaning of LSA-R.S 22:658. Plaintiff contends that he was unsure as to whether or not the offer was final or subject to further negotiation.
Defendant argues that it received plaintiff's final proof of loss on May 23, 1974 and that it tendered payment on July 9, 1974 forty-seven days after the proof was submitted. Defendant argues that the payment properly reflected the limitations of the policy and points out that the trial judge recognized these limitations in computing plaintiff's claim. Defendant points out that the trial judge only awarded plaintiff $363.88 more than the amount tendered and that indicates that the payment offered was reasonable and not arbitrary and capricious. *91 We conclude that the trial court was in error in concluding that defendant acted in an arbitrary and capricious manner.
LSA-R.S. 22:658 is a penal statute and must, therefore, be strictly construed. One who claims penalties and attorney's fees under the statute has the burden of proving submission to the defendant of "satisfactory proof of loss" as a necessary predicate to a showing that the defendant was arbitrary, capricious and without probable cause in failing to pay benefits. Gatte v. Coal Operators Casualty Co., 225 So.2d 256 (La.App. 3 Cir. 1969).
We find that defendant tendered payment to plaintiff within sixty days of presentation of satisfactory proof of loss. The record establishes that plaintiff submitted the repair bill which completed his itemization of losses on May 13, 1974. Prior to that date, defendant did not have a complete monetary estimate of plaintiff's losses. Even using May 13 as the point in time when a proof of loss was presented, defendant made a payment to plaintiff within the sixty day requirement of LSA-R.S. 22:658.
We also find that defendant made a valid tender of payment to plaintiff in submitting the draft for $2,162.02 without prejudice to plaintiff's further pursuit of his claim. We do not find that defendant acted arbitrarily and capriciously in offering this amount. Plaintiff received a letter from the GAB adjuster dated June 27, 1974 stating his claim exceeded the policy limits. A reading of the policy reveals that these limitations are unambiguously set forth in the part on "Additional Conditions." Robert Schoener, the adjuster testified that he had a telephone conversation with plaintiff about the adjustments on the claim, but plaintiff refused to concede that his claim should be reduced in any manner. Where an insurer's interpretation of its policy is reasonable, the denial of a claim is not arbitrary so as to require the imposition of the penalty and the insurer has a right to the judicial determination of the issue. Cotlar v. Gulf Insurance Co., 318 So.2d 923 (La.App. 4 Cir. 1975). We find that the defendant correctly interpreted the provisions of its policy. The trial judge agreed that plaintiff's claim had to be adjusted to reflect the limitations of the policy. We find it significant that the draft tendered was very close in amount to the principal amount awarded. We agree with defendant's argument that the difference could easily have been caused by the use of a slightly different rate of depreciation by the trial judge. We have no evidence before us indicating defendant used an improper rate of depreciation. We find that the defendant made a reasonable tender of payment under its policy and the trial court was in error in finding their actions to be arbitrary and capricious. We reverse the trial court's award of penalties and attorney's fees.
For the foregoing reasons that part of judgment awarding plaintiff penalties of 12% of the amount of the award and $700.00 attorney's fees is reversed and in all other respects the judgment of the district court is affirmed. REVERSED IN PART AFFIRMED IN PART.