360 So.2d 207 (1978)
John W. McMANUS d/b/a LeBonheur, Plaintiff-Appellant,
v.
TRAVELERS INSURANCE COMPANY et al., Defendants-Appellees.
No. 6406.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1978.
Rehearing Denied July 5, 1978.
Voorhies & Labbe, H. Lee Leonard and Marc W. Judice, Lafayette, for plaintiff-appellant.
Pugh & Boudreaux, Charles J. Boudreaux, Lafayette, for defendants-appellees.
Before WATSON, GUIDRY and FORET, JJ.
FORET, Judge.
John W. McManus, plaintiff, has appealed a judgment which denied him penalties and attorney's fees against defendants, Travelers Insurance Company and Charter Oak Fire Insurance Company. Charter Oak, a member of the Travelers Group and the *208 real party-defendant at interest, answered the appeal, contending that the judgment awarded McManus recovery for items not covered under the policy.
The issues on appeal are:
(1) whether McManus was entitled to recover for certain items under the terms and conditions of the fire insurance policy issued by Charter Oak;
(2) whether Charter Oak was arbitrary and unreasonable in failing to pay McManus for the items found to be covered by the trial court; and
(3) whether McManus was entitled to other damages due to Charter Oak's failure to pay the entire claim.
The facts in summary are that McManus leased a building from All American Assurance Company beginning on September 1, 1974, for the purpose of going into the restaurant business. The lease gave McManus a period of four months rent-free in which to make improvements and alterations of the premises and the lease was to run thereafter for a period of seven years. The lease provided that, at termination, McManus could remove only fixtures which had not become immovable and specifically that he could not remove any portion of the air conditioning, heating, plumbing, electrical, water or other systems or installations in the premises. (Tr., pg. 55).
McManus undertook extensive improvement and "betterments" to the building and purchased from defendant, Charter Oak, a policy of property and general liability insurance (Tr., 17, et seq., P-2). By its terms the policy insured McManus' personal property on the restaurant premises in the amount of $100,000 against various risks including ". . . direct loss by (1) Fire. . ." (Tr., 30). Specified as covered under coverage B which McManus obtained was:
"(a) personal property, including equipment, fixtures, furniture, machinery, signs and supplies, allowed by the Named Insured; * * *
"(c) tenant's improvements and betterments, meaning the Named Insured's use interest in fixtures, alterations, installations or additions comprising a part of the building occupied but not owned by the Named Insured and made or acquired at the expense of the Named Insured exclusive of rent paid by the Named Insured, but which are not legally subject to removal by him." (Tr., 33).
On April 1, 1975, a fire occurred at LeBonheur Restaurant which destroyed part but not all of the building and part but not all of McManus' personal property located on the premises. Smoke, soot and water used to fight the fire caused additional damage. Defendants' claim representative, one Terry Langley, undertook to adjust the fire loss. There were apparently many conferences between McManus and Langley with McManus submitting to Langley various invoices, estimates, bills, receipts, and other documents in an attempt to substantiate the value of his claim. It is undisputed that McManus submitted an adequate proof of loss; he claimed a total of $76,460. The premises were not repaired since McManus chose not to re-establish his restaurant. His claim was for items destroyed or damaged and for loss of use of various improvements or betterments not destroyed or damaged.
The adjuster for defendant eventually allowed $50,440.40 of McManus' claim but refused to pay the balance. Thereafter, McManus filed suit, contending that he was entitled to an additional sum of $25,560 and that the failure of defendants to pay was arbitrary, capricious, and without probable cause, entitling him to penalties and attorney's fees.
In addition, plaintiff sued for various other damages as the result of the refusal to pay, including interest on debts, damage to credit rating, mental anguish and the like. Plaintiff has established no legal basis for these other items of damages which were correctly disallowed by the trial court.
Following trial on the merits, a judgment was entered holding that plaintiff was entitled to an additional $22,792.42 for loss under his fire policy. The items allowed were as follows:

*209
"1. Upstairs Construction Work $ 964.31
 2. Don Bushnell 7,907.26
 3. Reynaud Interior 3,031.16
 4. Menus none
 5. Guest Checks none
 6. Steven's Brothers Painting
 Co. 583.39
 7. Lewis Sign Company none
 8. Guidry Iron Works 517.89
 9. Safeway Air Conditioning 654.40
10. Joseph Carpentry Works 2,263.66
11. Storage of Furniture 400.00
12. Downstairs Reconditioning 1,571.78
13. Plumbing 4,898.57
 __________
 TOTAL $22,792.42" (Tr.,259)

The figures above are principally the "use interest" calculated by the trial court by allowing 81/84ths of the various claims of McManus found to have merit. The 81/84ths fraction represents the number of months left of the total lease.
As to the award by the trial court, the somewhat complex record reflects that there is a reasonable evidentiary basis to establish the amounts awarded.
We will briefly review the various disputed items.
ITEM 1. UPSTAIRS CONSTRUCTION WORK
The insured furnished information to the adjuster to the effect that he and an employee, whose salaries were each $700 a month, had performed work for a period slightly in excess of one month in making the upstairs portion of the building suitable for restaurant purposes, this including building partitions for offices and a waitresses' lounge. The adjuster allowed $400, less $14.29 depreciation. The claim was for $1400. At trial the work was fully confirmed by the interior decorator, Bushnell, and the trial court had no difficulty in allowing the claim.
ITEM 2. DESIGN AND SUPERVISION FEE
This item was the $8,200 fee paid by McManus to Don Bushnell who designed and supervised the construction of the restaurant.
Adjuster Langley testified that: ". . . I did not feel that we owed this." (Tr., 287). Bushnell and others gave extensive testimony establishing the validity of the claim. It was a specific cost that had been incurred by McManus in making "improvements and betterments" as that term is used in the policy.
ITEM 3. REYNAUD INTERIORS ESTIMATE
This portion of the claim was based on an actual estimate made following the fire by Reynaud Interiors covering many items damaged or destroyed in the fire. It differs from some of the other claims in that it relates in part specifically to items physically damaged or destroyed. Certain draperies were destroyed, valued at $1,704.67. When added to small amounts claimed for chairs, sofas and tables burned, the total was $1,945.09. In addition to the items in the estimate actually destroyed, certain tenant improvements were included which would be considered on a loss of use basis. These included wallpaper repair, carpet repair and general cleanup. These additional items were adjusted on a use basis by the trial court to the figure of $1,850.46. Only $764.39 of Item 3 was paid by the insurer, leaving an unpaid claim on the Reynaud Interiors estimate of $3,031.16. No specific reason was given for non-payment by the insurer. The adjuster was furnished with Reynaud's estimate, which, as noted, was prepared after the fire.
ITEMS 4, 5, & 7. MENUS, GUEST CHECKS AND SIGN
The trial court found the insurer paid the proper amount on small claims for these items.
ITEM 6. PAINTING
The insurer did not allow the full amount for loss of use of the improvement to the building by painting. The reason advanced was that the paint was not damaged on certain walls of the building. The trial court found a balance due of $583.39. This item was clearly due as a loss of use under the policy.
*210 ITEM 8. GUIDRY IRON WORKS
We will quote the trial court as follows:
"This item consists of a gate which is closed at night in order to protect the patio furniture which belongs to LeBonheur. The Court considers this item to be a tenant's improvement in that it is permanently attached to the building. The adjustment should have been made according to plaintiff's `use interest'. Accordingly, the defendant owes the following amount:

 Original Cost $ 537.23
 Use interest remaining 517.89"
 (Tr., 257).

ITEM 9. SAFEWAY AIR CONDITIONING
The insurer allowed the claim as to all wiring and electrical work actually burned in the fire but the trial court awarded the total value of the electrical improvements to plaintiff because he had lost the use of the building. In addition, the trial court noted there was evidence from expert witnesses that there was a strong likelihood that all of the wiring was damaged and that no reputable electrician would use the remaining wire. An additional $654 was allowed by the trial court.
ITEM 10. JOSEPH'S CARPENTRY WORKS
The claim here was principally the cost of two bars which had been built into the building when the restaurant was established. The bars were permanently installed and could not be removed without destroying their value. It was also shown that they were physically damaged by water used to fight the fire. A fire insurer has for many years been held responsible for loss occasioned by water damage during the course of fighting a fire. Geisek v. Crescent Mut. Ins. Co., 19 La.Ann. 297 (1867). There was some evidence that if the entire premises could have been cleaned the next day and the bars dried out, much of their value could have been saved, but as the adjuster admitted, that would have been an impossibility. (Tr., 319). $2,263.66 was allowed by the trial court.
ITEM 11. STORAGE OF FURNITURE
Although the trial judge allowed $400 more than the insurer on this item, there is no substantial evidence that the insurer was unreasonable. Accordingly, the failure to pay cannot be said to be arbitrary.
ITEM 12. DOWNSTAIRS RECONDITIONING
The adjuster Langley thought that this was a duplication, and while the trial judge found to the contrary, the record does not establish that the insurer was arbitrary in disallowing payment of this item.
ITEM 13. PLUMBING
Only a portion of the plumbing installed by McManus to operate his restaurant was destroyed by the fire. However, the balance was imbedded in the concrete slab and could not be removed under the terms of the lease. Therefore, the allowance for the plumbing falls into the loss of use category. As the trial court observed:
"Some of this was damaged by the fire, but the use of the entire amount has been lost to Mr. McManus because the building has to be considered a total loss." (Tr., 258).
Counsel for defendant argues very forcefully that only items which were physically burned and destroyed were covered by the policy and refusal to pay other claims was not arbitrary and capricious. However, the well-established law of Louisiana is that a loss from fire or windstorm means essentially the same as "proximate cause" applied in negligence cases. Lorio v. Aetna Ins. Co., 255 La. 721, 232 So.2d 490 (1970); Norwich Union Fire Ins. Soc. v. Board of Commissioners, 141 F.2d 600 (5 Cir. 1944). The fire was the "proximate cause" of McManus' loss. His interest in the damaged items was lost when the fire destroyed his restaurant business.
In the present case, McManus decided not to repair his restaurant and re-establish his business. The trial court found as facts that: ". . . the building has to *211 be considered a total loss." (Tr., 258) and ". . . the building was destroyed beyond use by the fire." (Tr. 256). These factual findings of the trial court are accorded much weight on appeal. No contention was actually made that McManus could or should have re-established his restaurant; no testimony or evidence was offered that he acted other than reasonably in concluding not to repair or restore LeBonheur. Following McManus' decision not to reopen the restaurant, the building was torn down by the owner. Total loss of a building by fire can occur without complete annihilation. Hart v. North British & Mercantile Ins. Co., 182 La. 551, 162 So. 177 (1935).

STATUTORY PENALTIES & ATTORNEY FEES
McManus, plaintiff herein, makes a strong argument for the award of statutory penalties and attorney fees. The trial court disallowed plaintiff's demand for penalties and attorney fees, stating as follows:
"The plaintiff makes a claim for damages under L.R.S. 22:658, contending that the defendant insurance company was arbitrary and capricious in its failure to adjust the disputed items. The jurisprudence requires that this statute be given a strict interpretation, and in a doubtful case the issue must be resolved in favor of the insurer. We find that the defendant was in good faith in attempting to adjust plaintiff's loss, and in considering the difficulty this Court had dealing with the items involved and the apparent lack of effective communication between the parties, we find that Charter Oak's agent was not `arbitrary and capricious' under the statute."
In Headrick v. Penn. Millers Mutual Ins. Co., 257 La. 1101, 245 So.2d 324, the Supreme Court stated:
"The statute is penal in nature and, consequently, must be strictly construed. Nichols v. Iowa Mutual Insurance Company, 232 La. 856, 95 So.2d 338. As the courts have often held, penalties do not arise merely because the insurer is cast in judgment under the policy. They may be assessed only when the failure to pay is arbitrary and capricious. Wells v. Twin City Fire Insurance Company, 239 La. 662, 119 So.2d 501; Ranzino v. Allstate Insurance Company, La.App., 210 So.2d 907; Bennett v. Niagara Fire Insurance Company, La.App., 126 So.2d 718."
In Icklone v. Travelers Indemnity Co., 345 So.2d 202, this Court quoted with approval the well-established rule that the statute in question is penal in nature and must be strictly construed and that penalties may not be assessed merely because the insurer is the unsuccessful litigant in a law suit. These may be assessed only where the failure to pay is arbitrary, capricious, and without probable cause. See also Labbe v. Mt. Beacon Ins. Co., 221 So.2d 354 (La.App. 4 Cir. 1969); Cotlar v. Gulf Ins. Co., 318 So.2d 923 (La.App. 4 Cir. 1975); Reed v. U. S. Fidelity & Guaranty Co., 302 So.2d 354 (La.App. 3 Cir. 1974); Halford v. Republic Underwriters Ins. Co., 348 So.2d 87 (La. App. 4 Cir. 1977).
The claims of plaintiff in the case at bar were multitudinous, the liability for and proof of which left a good deal to be desired. However, as stated above, we find no manifest error on the part of the trial court in the various awards which it made.
We affirm the trial court's disallowance of plaintiff's demand for statutory penalties and attorney's fees.
For the foregoing reasons, the judgment of the trial court on all issues is affirmed.
Costs of this appeal are assessed equally between the parties litigant.
AFFIRMED.
WATSON, J., concurs in part and dissents in part and assigns written reasons.
WATSON, Judge, dissenting:
The majority, in a well-written and thoroughly researched opinion, finds every fact and establishes every element necessary to assess penalties and attorney's fees but, for some reason not stated, fails to do so. The insurance company gave no reason at trial for not paying the balance of McManus' *212 claim. Likewise, the majority gives no reason why the insurer was not required to pay the remainder of the claim. To say that penalties are denied because the statute is stricti juris begs the question. To say that the liability and proof of the claim leave much to be desired, as the majority concludes, is incorrect as shown by the majority's preceding review of the facts and the law.
The only witness testifying on behalf of the insurance company was their adjuster, Langley. He really said nothing to defend the charge that the refusal to pay the various claims was arbitrary and capricious. The adjuster knew that the entire stock of food and liquor in the building had been condemned by the health department. The floor and roof of the building actually fell through in one place, but the insurer consulted no expert on the plumbing loss, the electrical loss or any other phase of the claim. The insurance adjuster admitted under cross-examination that:
"Q. He [McManus] provided you with everything that you asked; is that correct?
"A. As I recall, yes." (TR. 333).
About the only reason assigned for not paying various claims by Langley was ". . . I did not feel that we owed this." (TR. 287).
The record is somewhat lengthy and careful study is required to isolate the various items claimed and the treatment of each by the insurer. However, the majority had no problem in dealing with Items 1 through 13 and determining the basis for each.
As to at least two claims: the drapes, chairs, sofas and tables of Item 3 valued at $1945.09; and the bars of Item 10 valued at $2,263.66; the chattels were either totally destroyed or damaged beyond use by the fire, soot, smoke and water. No dispute whatsoever exists as to their loss. However only $764.39 was paid on Item 3 (which, when other claims were added to the drapes and furniture, totaled $3,795.55) and nothing at all was paid on Item 10.
There was no confusion or complexity to Item 3 and Item 10. The insurer simply failed, arbitrarily, to pay the amounts owed.
The same is true of the other amounts not paid. Although the facts were somewhat complicated the law was not. The only exotic feature was that the claim involved substantial sums for loss of use of "improvements and betterments", but that was a precise risk insured against by the policy (see TR. 33 and the quotation in the majority opinion).
That a claim is factually complicated does not make failure to pay a valid loss any less arbitrary.
My analysis of the items found due by the trial court but denied by the insurer reveals that, of the ten items allowed by the trial court, only two items represented a valid dispute between the insurer and the insured. These were storage of furniture, which was a judgment decision and the downstairs reconditioning, which the adjuster thought to be a duplication of another claim. These items total only $1,971.78 of a total award of $22,792.42 by the trial court.
Items totaling $20,820.64 were clearly covered under the policy as interpreted by the jurisprudence. With due respect to my learned brother of the trial court, who favored us with an incisive analysis of the various claims of considerable complexity in his excellent reasons for judgment, and to my brothers of the majority, I conclude that the trial court erred in failing to allow penalties and attorney's fees. The failure and refusal of the insurer to pay McManus was arbitrary, capricious and without probable cause. He is entitled to a penalty of 12% on the sum of $20,820.64 and to a reasonable but substantial attorney's fee.
I respectfully dissent.