OFFSHORE LOGISTICS SERVICES, INC., Offshore Logistics, Inc. and Gulf Coast Marine, Inc.

v.

MUTUAL MARINE OFFICE, INC., and Arkwright-Boston Manufacturers Mutual Insurance Company.

SOUTHERN NATURAL GAS COMPANY

v.

ARKWRIGHT–BOSTON MANUFACTURERS MUTUAL INSURANCE COMPANY, and Mutual Marine Office, Inc.

Civ. A. Nos. 75–1021, 75–1036.

United States District Court,
E. D. Louisiana.

Aug. 20, 1981.

James H. Roussel, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for plaintiff Offshore Logistics.

Charles E. Lugenbuhl, Don Richard and James H. Daigle, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, La., for Southern Natural Gas.

Donald L. King, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant Mut. Marine Office, Inc. and Arkwright-Boston Manufacturers Mut. Ins. Co.

## MEMORANDUM AND ORDER

SEAR, District Judge.

Defendant Arkwright-Boston Manufacturers Mutual Insurance Company ("Arkwright-Boston") moves for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b).[1] In deciding the motion, I am once again presented with the question of under what circumstances may an insurer be penalized under Louisiana Revised Statute Annotated 22:658 (West 1978)[2] for refusing to pay a claim under a policy of insurance. Pretermitting that question, however, is the issue of whether I can grant relief from the judgment in this matter notwithstanding the fact that it was affirmed by the United States Court of Appeals for the Fifth Circuit.

---

1. The rule provides in part:

 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

2. The statute requires that payments on a non-personal insurance claim be made within sixty days after the claim is made. Failure to make payment within that period, "when such failure is found to be arbitrary, capricious and without probable cause," subjects the insurer to a penalty of twelve per cent of the claim plus attorney's fees incurred in recovering the amount from the insurer.

The facts giving rise to these cases have been fully recounted elsewhere;[3] for purposes of this motion, a summary will be sufficient. Offshore Logistics Services, Inc., and Offshore General, Inc. ("the Offshore group") and Southern Natural Gas Company ("Southern") were sued by a Southern crane operator for injuries he sustained during a crew change at an offshore oil rig. The Offshore group owned and operated the crew boat involved in the incident. Before the case was tried, the plaintiff agreed to settle his claim for $160,000. Southern and Offshore group's primary insurer contributed $100,000, the maximum amount covered by the policy, to the settlement fund, and the Offshore group looked to its excess insurer, Arkwright-Boston, for its share of the balance. Although Arkwright-Boston agreed that the settlement amount was reasonable, it refused to pay, contending that because it received late notice of the claim, it was not liable under the policy.[4] In order to preserve the settlement, the Offshore group borrowed $30,000 from its insurance broker, Gulf Coast Marine, Inc. ("Gulf Coast"), in return for an assignment of its right of reimbursement against Arkwright-Boston. The settlement was consummated, and the Offshore group and Gulf Coast then sued Arkwright-Boston to recover the $30,000 and attorney's fees as provided by the policy. Alleging that Arkwright-Boston's refusal to pay was arbitrary, capricious and without probable cause, the Offshore group and Gulf Coast also sought the penalty and attorney's fees authorized by section 658.

In an opinion entered on July 20, 1978, and reported at 462 F.Supp. 485, I found that although the company had received late notice of the claim, it had not been thereby prejudiced. Since under Louisiana law an insurer cannot refuse to pay under its policy unless the late notice of a claim results in actual prejudice, *Travelers Indemnity Co. v. Gulf Weighing Corp.*, 352 F.Supp. 335 (E.D.La.1972); *Heimbaugh v. Federal Insurance Co.*, 281 So.2d 839 (La. App.1973); *Miller v. Marcantel*, 221 So.2d 557 (La.App.1969), and Arkwright-Boston had not "proved or even alleged prejudice," I held that the company was liable for the $30,000. I did not award attorney's fees under the policy, however. 462 F.Supp. at 495. As for the penalty and attorney's fees sought under section 658, I concluded that the statute did not apply:

> The failure to pay the Offshore group's claim was not in my estimation arbitrary because a very real question existed concerning the late notice issue. Defendant's failure to pay the Offshore group cannot be deemed capricious when defendant sincerely believed it had a legal defense to the Offshore group's claim—a legal defense which was *not* patently frivolous.

*Id.* at 496 (emphasis in original). Accordingly, I denied recovery under section 658 and entered judgment in accordance with my opinion.

The Offshore group and Gulf Coast then moved to amend the judgment, contending that I had erred in declining to award attorney's fees under the policy and the penalty and attorney's fees under section 658. In an opinion entered on December 15, 1978, I granted the motion in all respects. On the section 658 issue, I held that even though Arkwright-Boston had acted in good faith, under Louisiana law its misinterpretation of the policy's coverage was enough to subject it to the statutory penalty. After my opinion was announced, Arkwright-Boston moved for reconsideration, but I denied its motion in an order entered on January 26, 1979. Soon thereafter, on February 5, 1979, Arkwright-Boston noticed an appeal from my order.

---

3. *See Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc.*, 462 F.Supp. 485, 487–89 (E.D.La.1978); *Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc.*, 639 F.2d 1168, 1169–70 (5th Cir.1981).

4. Arkwright-Boston's policy required that

> [t]he Assured, upon knowledge of any occurrence likely to give rise to a claim hereunder, shall give immediate written notice thereof to the Company.

I found that Arkwright-Boston was not notified about the crane operator's claim until more than a year after it occurred. *See* 462 F.Supp. at 495.

Then, acting *sua sponte*, I entered an opinion on February 22, 1979, in which, after thoroughly reviewing the applicable Louisiana jurisprudence, I concluded that I had been right the first time in not penalizing Arkwright-Boston under section 658. Although I recognized there was authority for treating an insurer's reasonable misinterpretation of its policy as "arbitrary" action under section 658, *see, e. g., Gulf Oil Corp. v. Mobile Drilling Barge or Vessel known as Margaret*, 441 F.Supp. 1 (E.D.La. 1975), *aff'd*, 565 F.2d 958 (5th Cir.1978); *Reichert v. Continental Insurance Co.*, 290 So.2d 730, 734–35 (La.App.1971), there was also authority supporting what I believed to be the better view that when an insurer acts reasonably though erroneously in reading its policy, it should not be penalized for acting upon that interpretation by withholding payment on a claim. *Halford v. Republic Underwriters Insurance Co.*, 348 So.2d 87 (La.App.1977); *Cotlar v. Gulf Insurance Co.*, 318 So.2d 923 (La.App.1975). Reiterating my finding that Arkwright-Boston had refused to pay the Offshore group's claim because of its "sincere belief that it had a valid defense," Opinion at 4, I amended the judgment to deny any penalty and attorney's fees under section 658.

After I determined an appropriate award of attorney's fees due under the policy, a final, amended judgment was entered in the matter on November 2, 1979. Both sides noticed appeals from this judgment.

On February 26, 1981, the Court of Appeals for the Fifth Circuit affirmed, without opinion, the judgment entered on July 24, 1978, as amended by my decision of December 15, 1978. *Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc.*, 640 F.2d 382 (5th Cir., 1981). As for the appeals taken from the November 2, 1979, judgment, the Fifth Circuit determined that once Arkwright-Boston had noticed its appeal on February 5, 1979, I lost jurisdiction to enter any further orders on the issue of statutory penalties. Accordingly, my

February 22 order was a nullity; the court of appeals vacated it and dismissed the appeals filed by the parties. *Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc.*, 639 F.2d 1168 (5th Cir. 1981). The court noted that it was leaving the December 15 order imposing statutory penalties as the final disposition of the section 658 issue, but found no injustice in this result, since

> our determination of Louisiana law, more fully explained in another case decided today, would have compelled the holding that Arkwright-Boston was liable for the penalty and attorney's fees under section 658, though for reasons different from those relied upon by the district court in his January 26, 1979, order [denying reconsideration of the December 15 ruling].

639 F.2d at 1170–71 (footnote omitted).

The other case cited by the court of appeals is *Offshore Logistics Services, Inc. v. Arkwright-Boston Manufacturers Mutual Insurance Co.*, 639 F.2d 1142 (5th Cir. 1981) (coincidentally involving the same parties as the instant matter but arising from a different incident; for the sake of clarity, I shall refer to it as "the companion case"). In the companion case, statutory penalties under section 658 were imposed against an insurer who had refused to contribute to a settlement negotiated by its insured. In its decision, the district court relied, *inter alia*, on *Gulf Oil Corp. v. Mobile Drilling Barge or Vessel, etc., supra*, as authority that even an innocent misinterpretation of an insurance policy renders the insurer subject to section 658. On appeal, the Fifth Circuit acknowledged that a recent Louisiana Supreme Court decision, *Rudloff v. Louisiana Health Services & Indemnity Corp.*, 385 So.2d 767 (La.1980), had apparently overruled cases like *Gulf Oil. Rudloff* held that an insurer who refused payment on a claim because of its good faith reliance on an exclusion clause in the policy could not be penalized under Louisiana Revised Statute Annotated 22:657, an insurance penalty statute similar to section 658,[5] even though

---

5. Section 657 and Louisiana Revised Statute Annotated 22:656 (West 1978) deal with personal life, health and accident insurance policies. For the unjustified failure of the insured

to pay on claims, they provide for penalties ranging from six per cent interest to twice the benefits due plus attorney's fees.

another statute required that the policy cover the claim. In discussing *Rudloff*, the Fifth Circuit noted that it could not "predict the extent of *Rudloff* on the previously existing rule that an erroneous, though reasonable interpretation of the policy by an insurer subjects the insurer to the statutory penalty and attorney's fees." 639 F.2d at 1145. However, it also noted that this rule was "in doubt even before *Rudloff*," and observed that while *Rudloff* dealt with section 657, the opinion cited with approval a case dealing with section 658, *Cotlar v. Gulf Insurance Co., supra. Id.* Without expressly deciding whether Louisiana law was now different because of *Rudloff*, the court of appeals nevertheless affirmed the district court, ruling that the lower court had made a factual finding that the insurer's refusal to pay was "unreasonable, arbitrary, and capricious." *Id. See Offshore Logistics Services, Inc. v. Arkwright-Boston Manufacturers Mutual Insurance Co.*, 469 F.Supp. 1099, 1109 (E.D.La.1979) (finding that the insurer refused to pay primarily because it disagreed with the settlement figure). Since this finding was not clearly erroneous, the Fifth Circuit upheld the district court's decision.

After the court of appeals announced its ruling that my February 22 order was void, Arkwright-Boston petitioned for a rehearing, but the motion was denied. It now seeks relief from the July 24, 1978, judgment as amended on December 15 in this Court. Arkwright-Boston argues that *Rudloff* has in fact changed Louisiana law and that the court of appeals erred in upholding the December 15 order. Since I have consistently found that Arkwright-Boston acted reasonably and in good faith, the company argues, this matter is distinguishable from the companion case decided by the Fifth Circuit, where the district court clearly found that the insurer acted unreasonably. Thus, Arkwright-Boston contends, it "obtained the right result in the wrong court and the wrong result in the correct court."

 It appears from the record that Arkwright-Boston's motion has been brought within a reasonable time as required by Rule 60(b); the Offshore group and Gulf Coast do not contend otherwise. Although Arkwright-Boston has not petitioned for a writ of certiorari from the United States Supreme Court, nor obtained leave from the Fifth Circuit before bringing its motion in this Court, I have the power to entertain the motion and, if well founded, to grant it even though the judgment challenged was affirmed by the court of appeals. *Standard Oil of California v. United States*, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976). Nevertheless, because the issue has been before an appellate court, my ability to act upon it depends upon the doctrine of "the law of the case."

The law of the case rule is based on the salutary and sound public policy that litigation should come to an end. It is predicated on the premise that "there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions or speculate of chances from changes in its members," and that it would be impossible for an appellate court to "perform its duties satisfactorily and efficiently" and expeditiously "if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal" thereof.

While the "law of the case" doctrine is not an inexorable command, a decision of a legal issue or issues by an appellate court establishes the "law of the case" and must be followed in all subsequent proceedings in the same case in the trial court or on later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.

White v. Murtha, 377 F.2d 428, 431–32 (5th Cir. 1967). *See also Schwartz v. NMS Industries, Inc.,* 575 F.2d 553, 554–55 (5th Cir. 1978); *Carpa, Inc. v. Ward Foods, Inc.,* 567 F.2d 1316, 1319 (5th Cir. 1978). Although the doctrine applies only to issues *actually* decided by the appellate court, and not those that merely could have been decided, it applies to issues decided *implicitly* as well as those decided explicitly. *Morrow v. Dillard,* 580 F.2d 1284, 1290 (5th Cir. 1978); *Terrell v. Household Goods Carriers' Bureau,* 494 F.2d 16, 19 (5th Cir.), *cert. dismissed,* 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974). *See also Gulf Coast Building & Supply Co. v. International Brotherhood of Electrical Workers, Local No. 480,* 460 F.2d 105 (5th Cir. 1972); *Eutectic Corp. v. Metco, Inc.,* 597 F.2d 32 (2d Cir. 1979).

■ In this case it is clear that the Fifth Circuit has decided the issue of penalties under section 658. My order imposing the penalties on December 15, 1978, was affirmed directly by the court of appeals in 640 F.2d 382; while this affirmance was without opinion, the court's discussion of the issue in 639 F.2d 1168, albeit *dicta* in that opinion, makes clear that the Fifth Circuit intended for penalties to be imposed against Arkwright-Boston. As an issue actually decided by an appellate court, the Fifth Circuit's resolution of the section 658 question is binding upon me as the law of the case unless one of the exceptions to the doctrine exists here.

The court's ruling in *White v. Murtha, supra,* recognizes three exceptions to the doctrine of law of the case. *See also Schwartz v. NMS Industries, Inc., supra.* First, the doctrine is inapplicable if "evidence on a subsequent trial was substantially different." No new evidence has been presented by either side on the issue of Arkwright-Boston's good faith, so this exception does not fit. Second, the doctrine does not apply if "controlling authority has since made a contrary decision of the law applicable." *Rudloff* was rendered after I entered my December 15, 1978, and January 26, 1979, orders but before the Fifth Circuit heard the appeals in this matter. The decision was discussed by the court in the companion case which was itself cited in the passage Arkwright-Boston challenges as wrong here. *See* 639 F.2d at 1170–71 & n.1. Therefore, the court of appeals was fully aware of *Rudloff* and that decision cannot be considered subsequent controlling authority within the meaning of *White v. Murtha.*

Arkwright-Boston is left with the third exception to the doctrine of law of the case, therefore: where "the decision was clearly erroneous and would work a manifest injustice." As outlined above, Arkwright-Boston's argument is that since the Fifth Circuit appears to recognize that good faith is a defense to section 658 penalties, and I have never found that Arkwright-Boston's actions were unreasonable, the decision of the court of appeals upholding the imposition of statutory penalties is clearly erroneous and manifestly unfair.

I agree that on the face of this record, Arkwright-Boston's argument appears to be correct. Unfortunately, in affirming my December 15 order and vacating my February 22 decision, the Fifth Circuit never clearly articulated its reasons for finding that section 658 penalties were warranted in this matter. In its published opinion, the court simply noted that the result of the December 15 order was correct, "though for reasons different from those relied upon by the district court ...." 639 F.2d at 1171. Thus, the court did not accept my rationale for the December 15 order: that innocent misinterpretation of a policy is enough to subject an insurer to statutory penalties. Still the Fifth Circuit must not have relied on the reasoning used in the companion case, since unlike the district court there I had never made a factual finding of unreasonableness. In short, from the bare language of these opinions, the Fifth Circuit's adoption of the December 15 order seems contradictory.

■ Despite this apparent paradox, however, I believe I am compelled to deny Arkwright-Boston's motion for relief from judgment. I am not certain why the Fifth

Circuit determined that statutory penalties should be imposed, but I can perceive two possible reasons. First, it may be that *Rudloff* has changed Louisiana law as Arkwright-Boston argues and the Fifth Circuit suggested; notwithstanding this fact, the court of appeals may have concluded that my finding of good faith was not supported by sufficient evidence and was erroneous. It has long been the rule in Louisiana that an insurer must prove prejudice in order to avoid paying on a claim that was noticed late, *see Travelers Indemnity Co. v. Gulf Weighing Corp., supra,* and Arkwright-Boston did not even allege that it had been prejudiced by the late notice it received, much less prove such prejudice. Although there was no evidence that Arkwright-Boston acted maliciously, and there was evidence that the company demonstrated "subjective good faith," *i. e.,* it sincerely believed its interpretation of the policy was correct, the Fifth Circuit may have concluded that absent any proof of "objective good faith," *i. e.,* Arkwright-Boston had reasonable grounds for its view of the policy, the refusal to pay on the claim constituted arbitrary and capricious behavior within the meaning of section 658. Second, it may be that *Rudloff* has not changed Louisiana law as broadly as Arkwright-Boston contends. Certainly, the facts in that case are different from here. In *Rudloff,* the insurer refused to pay because an express clause in the policy excluded coverage over the claim. A recently enacted statute, however, voided such clauses, requiring the *Rudloff* court to reform the policy to provide coverage. But the court declined to impose penalties because the new statute had not been judicially interpreted at the time the insurer refused to pay. Here, by contrast, there was no new statute affecting the scope of the policy's coverage. The Fifth Circuit may have reasoned that in such a situation, *Rudloff* is not applicable. Furthermore, I must take notice of a subsequent decision by the court of appeals, *Fidelity & Casualty Company of New York v. Superior Casing Crews, Inc.,* 642 F.2d 147, 150 (5th Cir. 1981), in which once again the Louisiana rule was stated to

be that "[m]isinterpretation by an insurer of its policy of insurance is not a reasonable ground for delaying payment of benefits and does not relieve an insurer of the payment of attorneys' fees" under section 658.[6]

In any case, given the unsettled state of Louisiana law in this area and the questionable record on the reasonableness of Arkwright-Boston's refusal to pay, I cannot conclude, as Arkwright-Boston wishes me to do, that the imposition of penalties under section 658 is "clearly erroneous." Writing on a clean slate, I might come to an opposite result from the court of appeals; but this is not a clean slate, and the Fifth Circuit's decision cannot be termed manifestly unjust. That being so, the doctrine of law of the case precludes me from deviating from the Fifth Circuit's resolution of this issue. Accordingly,

IT IS ORDERED that the motion for relief from judgment is DENIED.

---

**6.** Curiously, the opinion did not discuss or even cite *Rudloff.*