**ELEVATING BOATS, INC., et al., Plaintiffs/Appellants,**

v.

**GULF COAST MARINE, INC., et al., Defendants/Appellees.**

No. 84–3803
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 22, 1985.

Rehearing Denied Sept. 11, 1985.

---

Roy A. Raspanti, New Orleans, La., for Meldeans, Inc.

Michael J. Maginnis, New Orleans, La., for American Bankers Ins., Gulf Coast Marine, Jersey Int'l.

John J. Broders, Robert T. Lemon, New Orleans, La., for Manser Ins. Agency.

Before WILLIAMS, JOLLY and HILL, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This appeal involves the alleged breach of a marine insurance contract. The district court, exercising its admiralty jurisdiction, ruled for the insurance company. *See Elevating Boats, Inc. v. Gulf Coast Marine, Inc.,* 595 F.Supp. 160 (E.D.La.1984). The policyholders, Meldeans, Inc. and Elevating Boats, Inc. (Elevating), one of Meldeans' sister companies, challenge the district court's factual finding that the insurer sustained prejudice from their failure to

notify the insurer of an accident until two weeks before trial. Finding adequate evidence in the record supporting the district court's finding, we affirm.

## I. BACKGROUND [1]

### A. *The State Court Suit*

This suit had its genesis in a state court action initiated in January 1978 by Woodrow Rivers against Meldeans, Elevating, and Schlumberger Well Surveying Corp. Rivers served as the captain and sole crew member of a vessel owned by Elevating and operated by Meldeans. In January 1977, Rivers fell into a large hole on or near a pier owned or operated by Schlumberger. A few days after the accident Meldeans and Elevating were made aware of the accident and the injury to Rivers. Rivers never returned to work, and he underwent continuous medical treatment, culminating in a major surgery to his back in November 1977. Correspondence from Rivers' counsel to Meldeans and Elevating both before and after the surgery revealed the distinct possibility that Rivers might be totally and permanently disabled.

Two months after the surgery Rivers sued Meldeans, Elevating, and Schlumberger for damages under the Jones Act, 46 U.S.C. § 688 (1982), and general maritime law. After a two-day bench trial held in May 1979, nearly two and one-half years after the accident, the state district court sitting without a jury determined that Meldeans alone was the Jones Act employer of Rivers and that Meldeans breached its duty to furnish Rivers with a safe means of ingress to and egress from the vessel. It accordingly entered judgment for Rivers and against Meldeans in the amount of $229,000.00. Since the court concluded that neither Elevating nor Schlumberger were Jones Act employers of Rivers, they were exonerated of liability. The Louisiana Court of Appeal affirmed the judgment in *Rivers v. Schlumberger*, 389 So.2d 807 (La.Ct.App.1980).

### B. *The Insurance Coverage*

Prior to the accident, Meldeans and Elevating had procured a marine insurance policy from defendant appellee American Bankers Insurance Company of Florida (American Bankers). The American Bankers policy afforded coverage for claims up to $1,000,000 with a $100,000 deductible, and provided that American Bankers would defend Meldeans and Elevating for suits under the policy. The notice of claim provision of the policy provided, however, that Meldeans and Elevating would use due diligence to give American Bankers prompt notice of any accident for which Meldeans or Elevating were or might become liable and would forward to American Bankers "as soon as practicable" all communications and legal documents it received.[2] The district court found as a fact, however, that despite the seriousness of Rivers' injuries and the ongoing court action neither Meldeans nor Elevating had given any notice of claim to either American Bankers or American Bankers' insurance agents at any time prior to April 16, 1979. Rather, consistent with their usual practice of independently retaining counsel and defending suits such as Rivers', Meldeans and Elevating hired their own attorney to represent them in Rivers' suit in state court.[3]

---

1. This factual summary is taken from the district court's written findings of fact.

2. This provision explicitly stated that the insured, Meldeans and Elevating,

   Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which [Meldeans or Elevating are] or may become liable, [Meldeans or Elevating] will use due diligence to give prompt notice thereof and forward to [American Bankers] as soon as practicable after receipt thereof, all communications, processes, pleadings and other legal papers or documents relating to such occurrences.

3. Uncontradicted trial testimony revealed that, in an effort to keep their insurance premiums low, Meldeans and Elevating rarely reported claims to their various insurers. Rather, Meldeans and Elevating preferred to handle and, if necessary, defend these matters themselves. The evidence at trial established that Meldeans and Elevating successfully had settled or defended nearly two dozen other personal injury claims without notification to or participation by the insurers.

On or about April 16, 1979, two weeks before Rivers' state court trial commenced and well over two years after the accident, Lynn Dean, the president of Meldeans, sent a handwritten, undated note to the marine insurance broker that had handled the American Bankers' policy advising it of the scheduled trial date and enclosing a copy of Rivers' complaint. The insurance broker forwarded this letter and the supporting information to Jersey International, Inc., the company that acted as the underwriting and servicing arm for American Bankers' marine insurance business. On April 26, 1979, Jersey wrote to Dean and Elevating on behalf of American Bankers informing them that coverage for the claim and representation in the suit would be denied since neither Meldeans nor Elevating had ever filed the required notice of claim.

Meldeans instituted this suit in federal court under its admiralty jurisdiction, 28 U.S.C. § 1333(1) (1982), claiming that the defendants breached the marine insurance contract by failing either to represent Meldeans and Elevating or to afford coverage for the loss. After conducting a bench trial and making written findings of fact, the district court rejected these challenges. The court found that the notice to American Bankers only two weeks before trial did not meet the requirements of the notice of claim provision in the policy and that such failure had caused "substantial prejudice" to American Bankers. On the prejudice issue, the court concluded that the late notice deprived American Bankers of the opportunity to (1) make a prompt investigation of the claim, (2) appoint its own counsel to represent its interests, and (3) settle the case for less than the judgment actually awarded. The sole challenge Meldeans and Elevating raise in this appeal is whether the district court correctly concluded that American Bankers actually was prejudiced by their failure to notify American

Bankers of the accident and suit until the eve of trial.[4]

## II. DISCUSSION

In this appeal, we first determine whether in an admiralty case an insurer need demonstrate prejudice from an insured's failure to comply with a notice of claim or proof of loss provision in a marine insurance contract. If so, we must next determine whether sufficient evidence exists supporting the district court's factual determinations on the prejudice issue.

### A. *Applicable Law*

Meldeans cites a series of Louisiana cases for the established proposition that in Louisiana an insurer must demonstrate that an insured's failure to comply with a notice of claim or proof of loss provision actually prejudiced its interest before such a failure discharges its obligation to afford coverage under the policy. *See West v. Monroe Bakery, Inc.*, 217 La. 189, 46 So.2d 122, 128 (1950); *Fakouri v. Insurance Company of North America*, 378 So.2d 1083, 1086 (La.Ct.App.1979); *Barnes v. Lumbermen's Mutual Casualty Co.*, 308 So.2d 326, 328 (La.Ct.App.1975); *Miller v. Marcantel*, 221 So.2d 557, 559 (La.Ct. App.1969). It is equally well-established, however, that federal rather than state law governs the interpretation of a policy of marine insurance.[5] *St. Paul Fire and Marine Insurance Co. v. Vest Transportation Co.*, 666 F.2d 932, 941 (5th Cir.1982). Our research has disclosed no case discussing whether an insurer of a marine insurance policy need demonstrate prejudice from an insured's failure to give timely notice of a claim before denying coverage or benefits. Where, as here, no federal law, legislative or judicial, relating to the question exists, the law of the state where the marine insurance contract was issued and delivered is the governing law. *Eagle Leasing Corp. v. Hartford Fire Insurance*

---

**4.** Meldeans and Elevating have never claimed in either this Court or the district court that the notice of claim provision was ambiguous in any way.

**5.** In the district court and on appeal, American Bankers did not challenge the application of Louisiana law to this case. Rather, it argued that it sustained prejudice from Meldeans' dilatoriness.

*Co.,* 540 F.2d 1257, 1261 (5th Cir.1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2926, 53 L.Ed.2d 1063 (1977); *Walter v. Marine Office of America,* 537 F.2d 89, 94 (5th Cir. 1976); *Cf. Big Lift Shipping Co. v. Bellefonte Insurance Co.,* 594 F.Supp. 701, 704 (S.D.N.Y.1984) (since no admiralty rule exists controlling the interpretation of notice of loss provisions in marine insurance contracts, state law applies).[6] The instant policy was issued and delivered in Louisiana, and the parties implicitly conceded that in accordance with Louisiana law American Bankers needed to prove that it sustained prejudice from the failure of Meldeans and Elevating to give timely notice.

### B. *Prejudice*

■ The remaining question in this appeal is whether sufficient evidence exists supporting the district court's factual determination that American Bankers sustained prejudice from Meldeans' late notification of the accident. The factual findings of the district court sitting in an admiralty case are subject to the clearly erroneous standard of review. Fed.R.Civ.P. 52(a); *Domar Ocean Transportation Ltd. v. M/V ANDREW MARTIN,* 754 F.2d 616, 619 (5th Cir.1985). A finding is clearly erroneous only if the appellate court is left with a definite and firm conviction that a mistake has been made. *Black Gold Marine, Inc. v. Jackson Marine Co.,* 759 F.2d 466, 470 (5th Cir.1985); *Williams v. Reading & Bates Drilling Co.,* 750 F.2d 487, 489 (5th Cir.1985).

■ Meldeans and Elevating undertake to show that there is no evidentiary basis for the district court's findings on the prejudice issue. The district court found that Meldeans' and Elevating's failure to give timely notice to American Bankers denied American Bankers the opportunity to make a prompt and thorough investigation of the accident, negotiate for a settlement, or otherwise represent its interests during the pendency of the litigation. After carefully examining the record, we hold that adequate evidence exists to support the district court's findings on this issue.

American Bankers realistically sustained prejudice because it was precluded from discussing with Rivers the prospect of a settlement. The undisputed trial testimony reveals that because Meldeans' and Elevating's attorney was so confident that they would prevail in the Rivers' suit, *he never offered to settle Rivers' case.* Competent record evidence demonstrates, however, that Rivers was more than willing to settle the case for substantially less than the judgment he ultimately received. Had American Bankers been notified of the suit and hence had been involved in a settlement negotiation, it could have negotiated a settlement for substantially less than the ultimate judgment.[7]

American Bankers also sustained prejudice from Meldeans' and Elevating's failure either to file a third-party demand against Schlumberger for Schlumberger's failure to keep the pier in good repair or to insure that such a pleading was properly included in the record.[8] In its opinion upholding

**6.** *See also Kamani v. Port of Houston Authority,* 702 F.2d 612, 614 (5th Cir.1983) ("matters which are 'marine but local' will authorize the application of state law"); *Continental Oil Co. v. Bonanza Corp.,* 677 F.2d 455, 461 n. 7 (5th Cir.1982) ("When admiralty law speaks to a question, state law cannot override it.... But when admiralty law is silent, and there is no need for uniformity, state law must be heard."), *vacated on other grounds on reh'g en banc,* 706 F.2d 1365 (5th Cir.1983).

**7.** As a fall-back argument, Meldeans and Elevating insist that American Bankers' participation in any settlement negotiation would have been without any effect, because Meldeans and Ele-

vating possessed the right under the policy to reject any settlement offer. Because they were confident in their likelihood of success, so their argument goes, Meldeans and Elevating would have rejected any settlement American Bankers was prepared to offer Rivers. They overlook mentioning, however, that under a separate provision of the policy American Bankers would have limited its ultimate liability to the amount of the settlement that could have been reached.

**8.** The Louisiana Court of Appeal's published opinion reveals that Meldeans and Elevating asserted that Schlumberger was liable to them for failing to properly maintain the pier area. Finding no such third-party demand contained

Meldeans' liability, the Louisiana Court of Appeal concluded that although "Schlumberger was clearly negligent in failing to perform its duty" to maintain the pier, 389 So.2d at 817, the court could not require Schlumberger to indemnify Meldeans because no third-party demand appeared in the record. It is clear that if this elementary pleading had been included in the record, Schlumberger would have been liable to contribute to the judgment awarded Rivers or perhaps even indemnify Meldeans in full. Failure to make such a third-party claim or ensure that the record contained the pleading necessarily prejudiced American Bankers.

Finally, we conclude that the late notification denied American Bankers the basic opportunity to investigate adequately the facts and circumstances surrounding the accident. American Bankers lacked the opportunity to interview witnesses while their memories were fresh, examine the scene of the accident, determine the seriousness of Rivers' injuries, or even recommend that Rivers undergo immediate medical treatment to minimize the possibility of more serious, latent consequences. Adequate record evidence supports the district court's findings on the prejudice issue. We are left far short of a definite and firm conviction that a mistake has been made, and we therefore find no error.

### III. SUMMARY

In essence, this case shows that Meldeans and Elevating took a calculated risk, one they had taken numerous times before, in defending Rivers' suit. Meldeans and Elevating endeavored to lay behind the log and defend Rivers' suit themselves with a specific intent of keeping their insurance premiums low. At the same time, however, they sought to create a unilateral, non-mutual safety net of insurance coverage. Under the facts of this case, they lacked the right to do this. Notice of loss

in the record, however, the Court of Appeal could not enforce such a demand and require Schlumberger to indemnify Meldeans. 389 So.2d at 817. Although it is unclear whether Meldeans and Elevating ever filed such a pleading in the state court, it is readily apparent that even if they had they neither pressed the court for a ruling on the alleged third-party demand nor included the phantom demand in the record.

and proof of claim provisions will not be treated with hypertechnical punctiliousness, but neither will they be interpreted to be a sword to the insured.

AFFIRMED.