**FEDERAL DEPOSIT INSURANCE CORPORATION, etc.**

v.

**The AETNA CASUALTY AND SURETY COMPANY.**

**Civ. A. Nos. 86–1066, 88–0188.**

United States District Court,
E.D. Louisiana.

Aug. 29, 1990.

Anne Buxton Sobol, William Black, Harry Quillian, Office of General Counsel, Federal Home Loan Bank Bd., Washington, D.C., Robert Stephen Rooth, Corinne Ann Morrison, Dian Evans Kastl, Chaffe, McCall, et al., John P. Volz, Nancy Ann Nungesser, U.S. Attorney's Office, New Orleans, La., Michael F. Little, James "Jim" R.E. Lamz, Glenn William Angers, Little, Metzger & Lamz, Metairie, La., for plaintiff.

Arthur A. Lemann, III, Lemann O'Hara & Miles, New Orleans, La., for Charles B. Goslee.

Charles B. Goslee, New Orleans, La., pro se.

Ralph A. Hosch, New Orleans, La., pro se.

Donald Lynn Foret, New Orleans, La., for John A. Sutherlin, Jr.

Michael Seth Fawer, William R. Campbell, Jr., Michael S. Fawer, PLC, New Orleans, La., for Robert B. Sutherlin, Sutherland & Sutherland Partnership, Sutherland, Watkins & Sutherland, and Sutherland, Michell & Sutherlin.

Carolyn Pratt Perry, Funderburk & Andrews, Baton Rouge, La., for Aetna Cas. & Sur. Co.

ARCENEAUX, District Judge.

Before the Court is the defendant's Motion To Review Magistrate's Order Or, Alternatively Motion To Strike. This motion arises from the Federal Deposit Insurance Corporation's ("FDIC") suit to recover amounts it contends the Aetna Casualty and Surety Company ("Aetna") owes it for claims made pursuant to an Aetna Savings and Loan Blanket Bond No. 39 F 3190 BCA ("Bond") issued to Audubon Federal Savings & Loan Association ("Audubon") on July 1, 1983 [1] that plaintiff contends insured Audubon against losses resulting from dishonest or fraudulent acts committed by its employees. The FDIC alleges that certain fraudulent acts by Ralph Hosch, Audubon's former President, trigger Aetna's obligation to pay under the bond at issue.

*Procedural Posture*

The FDIC filed the complaint in this case on January 15, 1988 alleging fraudulent acts by Hosch in binding Audubon to loan participation agreements involving the Twin Cities Savings and Loan Association ("Twin Cities"). On March 3, 1988, the FDIC amended its complaint to allege fraudulent acts by Hosch in three other instances: first, that Hosch had committed Audubon to provide over $15,000,000.00 to unnamed loan participation agreements without consulting other Audubon officers and without authorization from the Audubon Board of Directors; second, that Audubon made a loan on a condominium development named Oceana Plaza ("Oceana Plaza") for which Hosch secretly received an interest in the project; and third, that Audubon made a loan to National Boulevard Enterprises, Inc. ("National Boulevard

loss") secured by a promissory note that itself was secured in part by a guarantee bond that was fraudulently prepared.[2]

The FDIC moved the Magistrate for leave to file a second amended complaint on February 26, 1990 to add yet another allegation of fraud by Hosch: that he received a kickback from the developers of the Admiral Semmes Hotel, located in Mobile, Alabama, for arranging approval for a $12,-000,000.00 Audubon loan for the hotel's renovation ("Admiral Semmes")[3] (Doc. 192). The Magistrate granted this motion, over the defendant's opposition, explaining that "[t]he motion was granted exclusively on a procedural basis and the Magistrate did not consider the merits of plaintiff's claim in making this ruling" (Doc. 202). Although this language does not reflect this view of the Magistrate's ruling, counsel for both the FDIC and Aetna represent in their respective papers in connection with the motion now before the Court that the Magistrate ruled on this motion without considering Aetna's arguments opposing the FDIC's motion to amend its complaint a second time or the FDIC's arguments supporting it (Doc. 203, p. 1–2, Doc. 205, p. 2).

*Analysis*

Aetna now appeals this ruling, arguing that it cannot be held liable as a matter of law for any of Hosch's actions in connection with the Admiral Semmes loan on three grounds. First, Aetna argues that the FDIC did not timely assert the claim according to the Bond's terms and, in fact, asserted the claim after the Bond had lapsed. On this point, Aetna contends that if one assumes as correct the FDIC's argu-

---

1. The Bond documents indicate that the Bond's original limit of liability was $1,230,000.00 (Doc. 205, Exh. B). By separate riders, Aetna increased the limit of liability first to $1,440,-000.00 effective December 1, 1983 and then to $2,500,000.00 effective March 2, 1984 (Id, Exh. C).

2. The first amended complaint also added a claim alleging that Robert Sutherlin, Audubon's former Chairman of the Board, caused Audubon to pay law partnerships in which he was a principal for work that the partnerships had said they had done but, in fact, had not.

The Court also notes that the FDIC has dropped its claim arising from the National Boulevard loss in the second amended complaint, a development to which Aetna does not object.

3. Hosch's activities involving the Admiral Semmes loan were the subject of a criminal prosecution for violating federal bribery, wire fraud and conspiracy statutes in *United States of America v. Hosch*, Criminal Action No. 89–013, Section J, United States District Court, Eastern District of Louisiana. Hosch was convicted of these charges May 17, 1989.

ment that the Bond terminated June 20, 1987, the FDIC did not discover the Admiral Semmes loss until after November 17, 1988, the date the FDIC filed its answer (Doc. 197, Exh. 10) to Aetna's second deposition under Federal Rule of Civil Procedure 30(b)(6).

Second, Aetna argues that the FDIC cannot pursue this claim because it did not comply with the Bond's requirements of notifying Aetna of any loss resulting from the Admiral Semmes loan within 30 days of discovering the potential loss (since Aetna received no notice of the kickback until the FDIC filed a proof of loss on this loan on February 3, 1989) or of providing a sworn proof of loss within 6 months of discovering the loss (again, Aetna contends the FDIC discovered the loss after November 17, 1988).

Third, Aetna contends that any FDIC claim stemming from the Admiral Semmes loan has prescribed. Again, Aetna assumes the FDIC's Bond termination date of June 20, 1987. Even if one applies the 24 month prescription period provided by the policy, as opposed to the one year liberative prescriptive period for delictual actions provided by La.Civ.Code Art. 3492 (West 1984) ("Art. 3492"), plaintiff's second amended complaint was filed outside the period and so the FDIC is precluded from asserting it.

The Court's analysis of these contentions must begin by examining the language of the Bond pertinent to the issues raised by Aetna's motion. Section 4 of the bond provides that:

> This bond applies to loss discovered by the insured during the bond period. Discovery occurs when the Insured becomes aware of facts which would cause a reasonable person to assume that a loss covered by the bond has been or will be incurred, even though the exact amount or details of loss may not then be known.
>
> Notice to the Insured of an actual or potential claim by a third party which alleges that the Insured is liable under circumstances which, if true, would cre-

ate a loss under this bond constitutes such discovery.

Section 5 of the Bond continues:

> (a) At the earliest practicable moment, not to exceed 30 days, after discovery of loss, the Insured shall give the Underwriter notice thereof.
>
> (b) Within 6 months after such discovery, the Insured shall furnish to the Underwriter proof of loss, duly sworn to, with full particulars ...
>
> \*    \*    \*    \*    \*    \*
>
> (d) Legal proceedings for the recovery of any loss hereunder shall not be brought prior to the expiration of 60 days after the original proof of loss is filed with the Underwriter or after the expiration of 24 months from the discovery of such loss ...

The clear language of the Bond indicates, and the parties agree, that it is discovery of a loss, and the date that this discovery takes place, and not the date that the loss was actually incurred or the date of the fraudulent acts causing the loss, that triggers coverage (that is, of course, if such discovery was made during the Bond period) (*See*, Doc. 197, pp. 3, 9, Doc. 205, p. 4). The Bond also clearly sets out that "discovery" for coverage purposes is less than absolute certainty of having sustained a loss, nor does it require knowledge of the details of such a potentiality. Discovery then triggers the FDIC's obligation to notify Aetna of the loss within 30 days and to file a formal proof of claim, with details within 6 months.

■ The FDIC complied with the notice provision of this Bond, however, when it served on Aetna a copy of the complaint filed in the case *FDIC v. Sutherlin, et al.,* Civ. Action No. 86–1066, Section K, Eastern District of Louisiana ("*Sutherlin* complaint"). This complaint which alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Hosch, among others, for, among other transactions, the Admiral Semmes loan. The cover letter, dated April 4, 1986, stated "[n]otice is hereby given of the claims set forth in the District Court and the potential loss that may have been in-

curred by [Audubon] which is covered by the [Bond]" (Doc. 205, Exh. D). The complaint listed as a specific allegation of RICO fraud the circumstances behind the Admiral Semmes loan, including the estimated loss to Audubon of the fraud alleged.

Aetna contends that the allegations in the *Sutherlin* complaint do not satisfy the notice provision because it does not mention the specific circumstance alleged in connection with the case now before the Court that activates the Bond's coverage: Hosch's alleged wrongdoing of obligating Audubon for the loan in exchange for a kickback he received after the financing was committed. Aetna contends that because the FDIC apparently did not learn of the kickback until Hosch's federal indictment, which was clearly after the Bond had terminated, it cannot be the basis for a claim under the Bond.

This theory, however, rubs against the grain of the Bond's language, which requires notice of the *loss*. The RICO complaint supplied the FDIC's estimate of the loss from the Admiral Semmes transaction. The kickback scheme only elucidated one of the ways in which the loss was incurred— i.e. it helps explain where at least a portion of the loss went and the manner in which it was accomplished. The information concerning the kickback, then, is in the nature of explanation that would be pertinent to

the formal proof of loss, not to the initial notice requirement. Because Aetna received the RICO complaint during the Bond's effective period, the FDIC timely notified Aetna of this claim.

The FDIC did not comply, however, with the Bond's requirement of filing a proof of loss "with full particulars" within six months of discovering the loss. The date of the Proof of Loss detailing the Admiral Semmes loan, February 3, 1989, is long beyond any six month period that could reasonably be calculated, even using the date of notice to Aetna.[4] The FDIC candidly admits that testimony at Hosch's criminal trial, much of it from witnesses testifying with grants of immunity from prosecution, enabled it to piece together the facts that formed a reasonable basis for asserting the Admiral Semmes claim. It argues that the fact that the kickback scheme was so encrusted in criminality that only that extensive powers of the federal government's prosecutors could pry it loose should not be used by Aetna as an excuse to void its claim and thereby force the FDIC to swallow the loss allegedly incurred as a result of this fraud.

■■■ As an initial matter, the Court observes that time limits on notice or proof of loss provisions are generally valid. *J.S. Fraering, Inc. v. Employers Mutual Liability Insurance Company*, 242 F.2d 609

---

**4.** The FDIC also filed a Proof Of Loss dated December 19, 1986 (Doc. 192, Exh. A) that provides:

> To the best knowledge, information and belief of [the FDIC], there are losses covered by the terms and conditions of [the Bond] with respect to actions be employees (or former employees) of [Audubon] (as defined in the bond) including, but not limited to: ... Ralph C. Hosch ...

If this Proof of Loss is considered sufficient Proof Of Loss for the Admiral Semmes loan, it would be timely since asserted within six months of the FDIC's discovery of the claim.

This Proof of Loss fails, however, to comply with Section 5(b) of the Bond's requirement that such Proofs be made "with full particulars." No construction of the language of this Proof can be said to have provided Aetna "sufficient information to act on the claim," *Sevier v. United States Fidelity & Guaranty Company*, 497 So.2d 1380, 1384 (La.1986), and so does not meet the purpose of such a requirement.

As will be discussed later in this opinion, failure to strictly comply with either notice or proof of loss provisions like those in the Bond will only void coverage if the insurer is prejudiced by the default. *Jackson v. State Farm Mutual Automobile Insurance Co.*, 29 So.2d 177 (La.1947); *Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*, 766 F.2d 195 (5th Cir.1985); *Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc.*, 520 F.Supp. 237 (E.D.La.1981). The Court notes, without deciding this issue, that if this were the only Proof Of Loss the FDIC filed concerning the Admiral Semmes loan, evidence would suggest grounds for a finding of prejudice. Because, however, the FDIC has filed a detailed Proof Of Loss, the prejudice issue becomes relevant only to the timing of that filing, i.e. is Aetna prejudiced because the specific Proof Of Loss was filed on the date that it was. This issue is addressed later in this opinion.

(La.1957). The purposes of such time limits are to furnish the insurer with all relevant data necessary to determine the extent of his potential liability and to prevent the insured from committing fraud or ill practices and the insurer from being placed at a disadvantage in obtaining evidence. *Robbert v. Equitable Life Assurance Society of United States*, 46 So.2d 286 (La. 1950); *Mier v. Niagara Fire Insurance Company*, 205 F.Supp. 108 (W.D.La.1962). A purpose is not, however, to provide Aetna with a "technical escape-hatch (sic) by which to deny coverage ..." *Miller v. Marcantel*, 221 So.2d 557, 559 (La.App. 3d Cir.1969). To further enforce this point, Louisiana courts, both state and federal, have held that a default of any notice provision in an insurance contract can void coverage only if the insurer proves that it was actually prejudiced by the lapse. *Jackson v. State Farm Mutual Automobile Insurance Co.*, 29 So.2d 177 (La.1947); *Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*, 766 F.2d 195 (5th Cir.1985); *Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc.*, 520 F.Supp. 237 (E.D.La.1981); *Travelers Indemnity Company v. Gulf Weighing Corporation*, 352 F.Supp. 335 (E.D.La.1972).

■ These principles plainly indicate that the fact that a proof of loss was not filed until February 3, 1989 will not preclude the FDIC from asserting the Admiral Semmes claim in this lawsuit since Aetna presents no facts that even hint that it was prejudiced by this delay. The FDIC provided Aetna not only with a notice of loss from the Admiral Semmes loan in December 1986, it provided Aetna with a copy of the RICO complaint it filed against Hosch and others, a case which Aetna has presumably been able to monitor. In fact, no evidence suggests any other conclusion than that the FDIC provided Aetna with full and accurate details of the Admiral Semmes transaction as soon as it knew them. In addition, trial of this matter is scheduled for May 13, 1990, meaning that Aetna will have had more than two years from the time it was notified of the details of Hosch's involvement in the Admiral Semmes loss until trial. Aetna cannot be said to be squeezed for time by the FDIC's amendment.

■ The Court is also impressed in this regard by the circumstances in which the details of the alleged Admiral Semmes fraud were revealed. Because most, if not all, of the crucial information about the manner in which the transaction was arranged was elicited from witnesses testifying only after being granted immunity from prosecution, the FDIC cannot have been reasonably expected to have discovered the particulars of Hosch's role any sooner than it did. Defaults of proof of loss requirements can be excused where circumstances make strict compliance with such provisions impossible or unreasonable and the lapse is not due to the insured's lack of due diligence. *Hayward v. Carolina Insurance Company*, 51 So.2d 405 (La.App. 5th Cir.1951), *reh. denied*, 52 So.2d 468 (La.1951). Since Aetna cannot reasonably claim prejudice and all evidence provided to the Court indicates that the FDIC diligently investigated the facts behind the Admiral Semmes loss and consistently kept Aetna abreast of the results of this (and other) investigations, the Court refuses to preclude the amendment the FDIC for failure to comply with Section 5(b)'s six month filing requirement.

■ Prescription cannot bar the FDIC's claim based on the Admiral Semmes transaction either. Whether the applicable prescription period is the one year period for delictual actions created by Art. 3492 or the two year period found in the Bond (Bond, § 5(d)), prescription commences when a plaintiff has actual or constructive knowledge, or knew or should have known, the facts that entitle him to bring suit. *Manion v. Pollinque*, 524 So.2d 25 (La.App. 3d Cir.1988), *writ denied*, 530 So.2d 572 (La.1988). Louisiana courts have written, more particularly, that prescription begins when the plaintiff has actual or constructive knowledge of the tortious acts complained of, the damages therefrom and the causal relation between the two. *Hero Lands Co. v. Borello*, 459 So.2d 658, 661 (La.App. 4th Cir.1984), *writ*

*denied,* 462 So.2d 651 (La.1985); *Duhon v. Saloom,* 323 So.2d 202, 204, 205 (and cases cited therein), *writ refused,* 325 So.2d 794 (La.1976). Prescription does not run against a plaintiff who is ignorant of facts upon which the cause of action is based as long as the ignorance is not willful, negligent or unreasonable. *Zumo v. R.T. Vanderbilt Co. Inc.,* 527 So.2d 1074 (La.App. 1st Cir.1987).

For the reasons discussed earlier, the Court believes that the sophisticated and well-planned nature of the alleged fraud in connection with the Admiral Semmes loan and the circumstances in which it was uncovered lead the Court to find that the FDIC did not know of Hosch's acts at any time earlier than the time of his prosecution in January 1989 and that this ignorance was reasonable and due to no fault, either willful or negligent, of the FDIC. The FDIC filed its motion for leave to amend its complaint a second time to add the Admiral Semmes claim on February 26, 1990, well within one year of Hosch's indictment on January 12, 1989 so prescription does not bar assertion of this claim. Accordingly,

IT IS ORDERED that defendant's Motion To Review Magistrate's Order Or, Alternatively Motion To Strike is DENIED as explained herein.

No hearing shall be held on this motion.