**RESOLUTION TRUST CORPORATION**

v.

**James J. GAUDET, et al.**

**Civ. A. Nos. 92–2661, 95–1929.**

United States District Court,
E.D. Louisiana.

Dec. 4, 1995.

---

Peter Allen Kopfinger, Blondeau, Caire & Gregorie, Baton Rouge, LA, Ben Weldon Lightfoot, Victor L. Roy, III, Kyle Melbourne Keegan, Susannah Marie DeNicola, Joseph E. Stockwell, III, William L. Caughman, III, Roy, Kiesel & Tucker, Baton Rouge, LA, Donna Garbarino Schwab, Donna G. Schwab, Baton Rouge, LA, David O. Mooney, Baton Rouge, LA, for Resolution Trust Corp.

Stephen Kenneth Conroy, John A. Stassi, II, Stassi, Griffith & Conroy, Metairie, LA, George Davidson Fagan, Leake & Andersson, New Orleans, LA, Douglas Scott Draper, Draper & Culpepper, New Orleans, LA, Peter Scott Michell, Hammond, LA, for James J. Gaudet, Harold Heidingsfelder, Emile J. Lecler, Jr., Robert S. Maloney, Sr., Robert S. Maloney, Jr., Albro P. Michell, Jr., Edward W. Reidl, Sr.

Bruce Victor Schewe, Debra J. Hale, Phelps Dunbar, New Orleans, LA, for William H. Price, Jr.

Michael Richard Allweiss, Lowe, Stein, Hoffman, Allweiss & Hauver, LLP, New Orleans, LA, Julie Anne Scheib, Leonard & Leonard, Ltd., Lafayette, LA, for Joseph G. Scheib, Jr.

## ORDER AND REASONS

JONES, District Judge.

Pending before the Court is a "Motion for Summary Judgment" filed by plaintiff United States Fidelity & Guaranty Company in C.A. No. 95–1929. Having reviewed the memorandum filed by the parties, the record, and the applicable law, the Court DENIES the motion.

### Background

The relevant facts for the purposes of this motion are uncontested.[1] United States Fidelity and Guaranty Company (hereinafter "USF & G") issued a Financial Institution Bond to Citizens Homestead Association (hereinafter "Citizens"), a state-chartered mutual savings and loan association, effective

1. *See* United States Fidelity & Guaranty Company's "Statement of Uncontested Material Facts," attached to its motion (R.Doc. 87) and Resolution Trust Corporation's response, admitting each fact, attached to its memorandum in opposition. (R.Doc. 92.) The background facts are summarized from these uncontested facts with direct citations as necessary.

for the period January 1, 1988, to January 1, 1989. The bond provided that USF & G would indemnify Citizens for losses resulting directly from dishonest or fraudulent acts committed by a Citizens employee acting alone or in collusion with others.[2]

For the purposes of this motion, three provisions of that bond are relevant. First, the bond provided that it applied to losses discovered by the insured during the bond period and also stated:

> Discovery occurs when the Insured first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this bond has been or will be incurred regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount of details of loss may not then be known.[3]

The bond also provided in a section entitled "Notice/Proof—Legal Proceedings Against Underwriter," "[a]t the earliest practicable moment not to exceed 30 days after discovery of loss, the Insured shall give the Underwriter notice thereof."[4] Further, "[w]ithin 6 months after such discovery, the Insured shall furnish to the Underwriter proof of loss, duly sworn to, with full particulars."[5]

The third relevant provision of the bond for present purposes provides: "In the event of payment under this bond, the Underwriter shall be subrogated to all of the Insured's rights of recovery therefor against any person or entity to the extent of such payment."[6] Another sub-part of that same section of the bond provides, in pertinent part, that "[t]he Insured shall do nothing after discovery of loss to prejudice such rights or causes of action."[7]

Citizens was insured by the Federal Savings and Loan Insurance Corporation (hereinafter "FSLIC"), which took possession and charge of Citizens and was appointed its Receiver on August 7, 1989. On that same day, the Federal Home Loan Bank Board authorized FSLIC as Receiver of Citizens to form Citizens Homestead Federal Savings Association (hereinafter "Citizens, FSA"). FSLIC as Receiver then executed a purchase and assumption agreement with Citizens, FSA, in which substantially all of Citizens' assets were purchased by Citizens, FSA.

On August 7, 1989, FSLIC was also appointed Conservator of Citizens, FSA.

Two days later, the Financial Institutions Reform, Recovery, and Enforcement Act (hereinafter "FIRREA") became law; among other things, FIRREA abolished FSLIC and created a new agency, the Resolution Trust Corporation (hereinafter "RTC"), to hold and manage the assets of failed thrift institutions. 12 U.S.C. § 1441(b). FIRREA also provided that the Director of the Office of Thrift Supervision (hereinafter "OTS") would be the primary regulatory official in charge of overseeing thrift institutions, in place of the Federal Home Loan Bank Board. 12 U.S.C. §§ 1462–64, 1813(q)(4).

Approximately two years later, on June 7, 1991, the Director of OTS ordered Citizens, FSA, closed and appointed the RTC as Receiver and Liquidator of Citizens, FSA, pursuant to FIRREA. *See* 12 U.S.C. § 1821(c)(6)(B). Upon its appointment as Receiver of Citizens, FSA, RTC succeeded to all of the assets of the failed institution, including any causes of action held by Citizens, FSA, against third parties. *See* 12 U.S.C. §§ 1441a(b)(4) and 1821(d)(2)(A).

RTC as Receiver submitted to USF & G a "Proof of Loss" dated September 21, 1993, alleging that a former officer of Citizens, William H. Price Jr., was instrumental in Citizens' acquisition of several participations in poor quality loans made by River City Federal Savings Bank (hereinafter "River City") between the period August 1983 and

---

2. Insuring Agreement, § entitled "Fidelity," attached to Exh. A of USF & G's memorandum in support. (R.Doc. 87.)

3. *Id.,* "Conditions and Limitations," § 3.

4. *Id.,* § 5(a).

5. *Id.,* § 5(b).

6. *Id.,* § 7(b).

7. *Id.,* § 7(e).

May 1985.[8] This "Proof of Loss" was the first notice to USF & G of the alleged loss by Citizens of approximately $5.6 million as a result of those loan participations.

In the "Proof of Loss" RTC alleged that Price, his family and business associates were advanced credit by River City in exchange for his efforts in having Citizens acquire the loan participations. RTC further alleged that Citizens first became aware of the Price's alleged "dishonest and/or fraudulent" activities on January 19, 1988, when Citizens, as a listed creditor, received copies of schedules filed in Price's Chapter 7 bankruptcy action.[9] According to the bankruptcy schedules, Price had received 18 loans from River City from 1984 to 1987.

The bankruptcy proceeding had been filed five days earlier, on January 14, 1988, in United States District Court for the Middle District of Louisiana. However, Citizens failed to file an objection to the discharge of Price in bankruptcy, and his discharge was ordered on April 28, 1988.

Approximately one month later and more than one year before its takeover by FSLIC, Citizens filed suit against River City and its directors in state court in East Baton Rouge Parish, alleging that River City had improperly underwritten and serviced the loans in which Citizens had purchased participations and also alleging that River City had made the loans to Price as a concession for the approval by Price of Citizens' acquisition of the participations. After the suit was removed to federal court, it was administratively closed following the takeover of Citizens by FSLIC and its successor, RTC. River City had previously been taken over by federal regulators. However, prior to the suit's closure, Price had filed an answer as one of the defendants asserting as an affirmative defense his previous discharge in bankruptcy.

On May 30, 1995, by operation of law, RTC, as Receiver, transferred any claims of Citizens, FSA, against third parties to RTC in its Corporate capacity. USF & G then filed this action in June of this year, seeking declaratory judgment that the bond does not provide coverage for the acts set forth in the "Proof of Loss" and that USF & G has no liability for the claim asserted.[10] Specifically, USF & G alleged that, because RTC filed the Proof of Loss more than five years after discovery by Citizens of the alleged loss, Citizens failed to comply with the bond requirements.[11] Further, despite Citizens' knowledge of Price's bankruptcy, Citizens failed to object to Price's discharge, thus prejudicing USF & G.[12]

RTC answered, denying the allegations that the "Proof of Loss" was untimely and that USF & G was prejudiced.[13] RTC also filed a counterclaim alleging that by its failure to pay the claim, USF & G has breached the bond contract and that RTC is entitled to enforcement of the contract and recovery of not less than $1.23 million, the full aggregate liability of USF & G under the bond.[14]

USF & G brings this motion on the basis that the "Proof of Loss" filed by RTC in September 1993 violated the bond's notice provisions and that it has also been prejudiced for several reasons, including Citizens' failure to object to Price's discharge in bankruptcy and the passage of time since the events underlying the allegations of fraudulent acts by Price. Hence, USF & G argues that it is entitled to summary judgment not only on its claim but also on RTC's counterclaim.

---

8. Attachment to Exh. B of RTC's memorandum in support. (R.Doc. 87.)

9. *Id.,* p. 2.

10. R.Doc. 1, C.A. No. 95–1929.

11. *Id.,* ¶ XXI.

12. *Id.,* ¶ XXII. USF & G also alleged that: the circumstances of the alleged loss occurred prior to the bond's effective date; that because Price did not have the authority to approve the loan participations, which had to be approved by Citi-

zens' loan committee; and that neither Price, his family nor his business associates were advanced credit by River City in exchange for Price's efforts to have Citizens acquire the loan participations from River City. *Id.,* ¶¶ XXIV, XXVI, and XXVII. However, these allegations are not pertinent to this motion.

13. R.Doc. 6, ¶¶ 21 and 22.

14. *Id.,* ¶¶ 47–48.

RTC contends that summary judgment is inapt because there has been no showing of prejudice.

## Law and Application

### I. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." (Emphasis added.) The mover first bears the burden of "coming forward with the absence of genuine issues of material fact...." *Kinsey v. Farmland Industries, Inc.*, 39 F.3d 603, 606 (5th Cir.1994), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1956).

If the mover meets its burden, the non-movant's burden of then showing a genuine issue of material fact "is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Further, "factual controversies [are resolved] in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.*

In other words, the inferences drawn from the underlying facts, however, must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986). The substantive law determines materiality of facts, and only facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In essence, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

### II. Notice/Prejudice

▆ Under Louisiana law, which is applicable here,[15] "time limits on notice or proof of loss [in bonds] provisions are generally valid," *Aetna*, 744 F.Supp. at 733, *citing J.S. Fraering, Inc. v. Employers Mutual Liability Insurance Company*, 242 F.2d 609 (5th Cir.1957).

The purposes of such time limits are to furnish the insurer with all relevant data necessary to determine the extent of its potential liability and to prevent the insured from committing fraud or ill practices and the insurer from being placed at a disadvantage in obtaining evidence. [Citations omitted.] A purpose is not, however, to provide [a surety] with a "technical escape-hatch (sic) by which to deny coverage ..." *Miller v. Marcantel*, 221 So.2d 557, 559 (La.App. 3rd Cir.1969). To further enforce this point, Louisiana courts, both state and federal, have held that a default of any notice provision in an insurance contract can void coverage only if the insurer proves that it was actually prejudiced by the lapse. *Jackson v. State Farm Mutual Automobile Insurance Co.*, 29 So.2d 177 (La.1947); *Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*, 766 F.2d 195 (5th Cir.1985); *Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc.*, 520 F.Supp. 237 (E.D.La.1981); *Travelers Indemnity Company v. Gulf Weighing Corporation*, 352 F.Supp. 335 (E.D.La.1972).

---

**15.** Both parties agree that Louisiana law is applicable, and the Court agrees that this is the right choice. Because this bond was issued in Louisiana between private parties prior to FSLIC's takeover of Citizens, analysis under Louisiana law is appropriate, especially where there has been no showing that such law is inconsistent

with federal law. *See FDIC v. Fidelity and Deposit Company of Maryland*, 1994 WL 462996 at *2 (McNamara, J.), *citing Federal Deposit Insurance Corp. v. New Hampshire Ins. Co.*, 953 F.2d 478, 481–82 (9th Cir.1991) and *FDIC v. Aetna Casualty & Surety Co.*, 744 F.Supp. 729 (E.D.La. 1990) (Arceneaux, J.)

*Id.* at 734 (editing in original). *See also Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1173 (5th Cir.1992) ("rule in Louisiana is that where the requirement of timely notice is not an express condition precedent, the insurer must demonstrate that it was sufficiently prejudiced by the insured's late notice").[16]

■ The question then, in this case, is whether USF & G has been prejudiced.[17] USF & G claims prejudice on two fronts. First, it contends that it was prejudiced when Citizens failed to object to Price's discharge in bankruptcy. This failure resulted in Price's discharge, whereas USF & G argues that had Citizens objected and, because USF & G was subrogated to any rights Citizens may have had, a successful objection to Price's discharge may have allowed USF & G to recover any monies it may have to pay as a result of RTC's instant lawsuit. Second, USF & G maintains that it has been prejudiced due to the passage of time since the alleged fraudulent acts of Price, as evidenced by, among other things, the loss of one volume of the record in Citizens' 1989 civil lawsuit against River City and Price.[18]

The Court finds USF & G's position to be untenable for several reasons.

First, according to the plain language of the bond itself, USF & G only becomes subrogated to Citizens' rights or recovery against any other person or entity "[i]n the event of payment under this bond" and "to the extent of such payment."[19] Thus, because there has been no payment under this bond, USF & G's argument as to subrogation is premature.

■ Second, the Court finds that—even had an objection been filed to Price's discharge by Citizens, even had the objection been upheld by the bankruptcy court and even if USF & G were subrogated to any rights Citizens and/or RTC, all of which are suppositional—there is a genuine issue of material fact whether USF & G could have ever recovered any monies from Price. A review of Price's financial statement as of July 1994 reveals that he earned less than $25,000 in 1993 and only had $1,700 in readily available assets (cash and cash surrender value of his life insurance policy) at the time of the financial statement.[20] Additionally, his monthly income fell short of his expenses, and his only other assets were two older vehicles (a 1988 van and a 1987 car listed as his son's vehicle), his wedding band and his watch.[21] The Court finds that Price's lack of assets creates a genuine issue of material fact as to whether or not USF & G was prejudiced because, quite obviously, whether or not it could have received a judgment against Price, it may not have been able to recover on that judgment.[22]

---

16. USF & G concedes that because the bond does not make timely notice a condition precedent to coverage, it must demonstrate prejudice as a result of the late notice and late proof of loss. USF & G's memorandum in support, p. 14. (R.Doc. 92). *See MGIC Indemnity Corp. v. Central Bank of Monroe, La.*, 838 F.2d 1382, 1386–86 (5th Cir.1988); *Joslyn Manufacturing Company v. Liberty Mutual Insurance Company*, 30 F.3d 630, 633 (5th Cir.1994).

17. Although the Louisiana Supreme Court has listed various factors to be considered by a court in "balancing the equities" on a determination of whether late notice bars coverage, *Jackson v. State Farm*, 29 So.2d at 178–79, it is clear that most courts have concentrated on the issue of prejudice in making this determination. *See, e.g., Miller v. Marcantel*, 221 So.2d at 559; *Peavey*, 971 F.2d at 1173. Therefore, the Court addresses this issue first, followed by an analysis of USF & G's other arguments.

18. Affidavit of Rick Caballero, attached as Exh. E to USF & G's memorandum in support. (R.Doc. 87.)

19. "Conditions and Limitations," § 7(b), Exh. A–1, attached to USF & G's memorandum in support. (R.Doc. 87.)

20. Exh. B, attached to RTC's memorandum in opposition. (R.Doc. 92.)

21. *Id.*

22. The Court notes that, although this 1993 financial statement does not appear to be notarized, USF & G has not challenged the admissibility of this evidence on the motion for summary judgment, wherein the admissibility of evidence is governed by the same standards and rules that govern admissibility of evidence at trial. *Donaghey v. Ocean Drilling & Exploration Company, Inc.*, 974 F.2d 646, 650, n. 3 (5th Cir.1992), *citing Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 175–76 (5th Cir.1990). As a result, the Court finds that any objection to the

USF & G principally relies on two cases in support of its argument that it has been prejudiced. In *Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*, 766 F.2d 195, 199–200 (5th Cir.1985), the court of appeals found that an insurer had been prejudiced from its insured's late notification of an accident because the policyholders failed to file a third-party demand against the owner of a pier where injured party had been hurt. In the underlying personal injury suit, a Louisiana court of appeal had found that the owner was clearly negligent in failing to maintain the pier but could not require indemnification of one of the insureds because there had been no third-party demand. *Id.* at 200. In considering the appeal of one of the policyholders from the district court's ruling that the insurer had sustained prejudice, the Fifth Circuit stated:

> It is clear that if [the third-party demand] had been included in the record, [the pier owner] would have been liable to contribute to the judgment awarded [the personal injury plaintiff] or perhaps even indemnify [one of the insureds] in full. Failure to make such a third-party claim or ensure that the record contained the pleading necessarily prejudiced [the insurer].

*Id.*

However, in this case there is a genuine issue of material fact as to whether there has been any prejudice in view of Price's lack of assets. The penury of the pier owner was not a factor in *Elevating Boats* and distinguishes it from the present case.

The second case relied on by USF & G, *Security National Bank of Kansas City, Kansas v. Continental Insurance Company*, 586 F.Supp. 139 (D.Kan.1982), is inapposite for two reasons. Not only did it apply Kansas law but also the bank filed proofs of claims in the bankruptcy court and settled those claims with the bankruptcy trustee, "dismiss[ing] its claims with prejudice, and releas[ing] the debtors with no reservation of rights against the bankrupt companies" despite the fact that the "estates of the bankrupts contained $827,181.00 after the settlement." Here, RTC has shown a genuine issue of material fact that even several years after Price's discharge in bankruptcy, when he obviously had no assets, Price still has no money. Thus, *Security National Bank* is factually inapplicable.

USF & G further posits that, if Citizens or USF & G had objected to Price's discharge, Price may not have objected and any costs and expenses in objecting may have been avoided. However, the Court rejects this argument as pure speculation.

USF & G also maintains that, had the objection to Price's discharge been upheld, then any non-dischargeable judgment against Price would have "followed Price forever."[23] However, the Court rejects this contention for two reasons. First, USF & G speculates that its objection would have been upheld. Second, whether or not a non-dischargeable judgment would have "followed Price forever," the fact remains that both at the time of Price's discharge in bankruptcy and several years later, Price still has virtually no assets on which to foreclose. Thus, there remains a genuine issue of material fact as to whether there has been any prejudice to USF & G.

Other issues as to prejudice raised by USF & G relate to the Citizens/River City lawsuit filed in state court and then removed to federal court in Baton Rouge before being administratively closed and to the passage of time itself. USF & G argues that, based upon the affidavit of Price's attorney, one of the records from the Citizens/River City lawsuit "has been lost or misplaced."[24] However, the Court is at a loss to know how the loss of one volume of the court record, even assuming it is lost, prejudices USF & G without further knowledge of what was contained in that record. Further, as RTC points out, the attorneys involved in that lawsuit may have copies of the pleadings from the "missing" volume. USF & G has made no showing that it has been unable to

authenticity of this document has been waived by USF & G. *Donaghey,* 974 F.2d at 650, n. 3.

**23.** RTC's supplemental memorandum in support, p. 3. (R.Doc. 94.)

**24.** Affidavit of Rick Caballero, attached as Exh. E to USF & G's memorandum in support. (R.Doc. 87.)

obtain the "missing" pleadings from those attorneys and, hence, has failed to show an absence of genuine issues of material fact necessary on a motion for summary judgment.

USF & G also theorizes that the "risk is very real" that between the five-year period of the date of discovery of the alleged notice and RTC's notice of the loss to USF & G, "documents necessary to properly evaluate ... liability .. have been lost, misplaced or destroyed" and that "[u]ndoubtedly the memories of the witnesses will have faded." [25] However, the Court finds that this allegation of "risk" does not establish an absence of any genuine issues of fact that documents *have* been lost or memories *have* faded. Thus, USF & G has failed to carry its burden on summary judgment as to this point.

Finally, the Court addresses several other points raised by USF & G in conjunction with its reliance on the factors set forth in *Jackson v. State Farm*, 29 So.2d at 179. *See* n. 16, *supra*. First, there is no doubt that there was a five-year delay between notice to Citizens of substantial injury and RTC's subsequent notice to USF & G. However, the Court finds that the genuine issue of material fact as to lack of prejudice arising from Price's lack of assets outweighs the mere passage of time. Similarly, USF & G's failure to show the absence of genuine issues of material fact as to loss of documents, court records or memories also make the passage of time, in and of itself, of lesser importance.

Two other *Jackson v. State Farm* factors are the good faith of the insured and injured party and the existence of special circumstances, including "those indicating fraud or collusion." *Id.* USF & G argues that, although there is no evidence of fraud or collusion, "the Court should take into consideration the sophistication of the parties involved." [26] However, the case upon which USF & G relies for this proposition, *MGIC Indemnity Corp.*, is inapposite because it dealt with the sophistication of the parties in the context of a policy where the notice provision was a condition precedent to recov-

ery under the policy. *MGIC Indemnity Corp.*, 838 F.2d at 1385–87. As noted above,[27] USF & G concedes that the instant bond does not contain such a condition precedent provision. Thus, the factual situation in *MGIC Indemnity Corp.* differs from this case, and USF & G's argument founders.

## III. Conclusion

Because the Court finds a genuine issue of material fact as to prejudice arising from Price's ongoing lack of financial resources, and because USF & G has failed to show an absence of genuine issues of material facts as to other items of prejudice due to the passage of time which it contends it sustained, the Court holds that summary judgment is inappropriate. Matters remain for resolution by the factfinder. *Anderson, supra.*

Accordingly,

IT IS ORDERED that the "Motion for Summary Judgment" filed by United States Fidelity and Guaranty Company is DENIED.

**25.** USF & G's memorandum in support, pp. 21–22.

**26.** USF & G's memorandum in support, p. 24.

**27.** N. 15, *supra*.