# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 9, 2011

No. 10-30886

Lyle W. Cayce
Clerk

STEPHEN MARSHALL GABARICK, on behalf of himself and all others similarly situated; Et Al,

Plaintiffs

v.

LAURIN MARITIME (AMERICA) INCORPORATED; Et Al,

Defendants

_____

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,

Plaintiff - Intervenor - Appellant

HOUSTON CASUALTY INSURANCE COMPANY,

Intervenor - Appellant

v.

AMERICAN COMMERCIAL LINES, L.L.C.; AMERICAN COMMERCIAL LINES, INCORPORATED,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

No. 10-30886

Before HIGGINBOTHAM, OWEN, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Appellants Houston Casualty Company and Indemnity Insurance Company of North America (collectively, the "Excess Insurers"), appeal the district court's decision requiring them to pay prejudgment interest on the funds deposited into the court's registry in an interpleader action. The Excess Insurers argue that the district court erred by: (1) finding that coverage under the excess policy was triggered by the primary insurer's filing of an interpleader complaint; (2) holding that a marine insurer that files an interpleader action and deposits the policy limits with the court is obligated to pay legal interest in excess of the policy limits; and (3) applying the incorrect interest rate and awarding interest from the incorrect date. Because the Excess Insurers' liability had not been triggered at the time the Excess Insurers filed their interpleader complaint, we conclude that the district court erred in finding that they unreasonably delayed in depositing the policy limit into the court's registry and in holding them liable for prejudgment interest; therefore, we REVERSE and do not reach the Excess Insurers' remaining issues.

## I.  FACTS AND PROCEDURAL HISTORY

On July 23, 2008, the M/V TINTOMARA struck the DM-932, which was in tow of the M/V MEL OLIVER, resulting in an oil spill in the Mississippi River. American Commercial Lines, LLC ("ACL") owned the DM-932, but DRD Towing Company, LLC ("DRD Towing") operated the MEL OLIVER. After the accident, several lawsuits were filed against ACL and DRD Towing.

DRD Towing had a protection and indemnity policy with Indemnity Insurance Company of North America (the "Primary Insurer")[1] that provided coverage of up to $1 million. DRD Towing also had an excess insurance policy

---

[1]  Indemnity Insurance Company of North America is also one of the Excess Insurers.

No. 10-30886

with the Excess Insurers that provided coverage of up to $9 million. In the trial court, ACL claimed that it was an additional insured under the excess policy.[2]

Due to the various claims filed against DRD Towing and ACL, the Primary Insurer filed an interpleader complaint on August 11, 2008, seeking to deposit $985,000 (the policy limit less the deductible) with the court and requesting that the court determine the rights of the various claimants, including the Primary Insurer, to the funds. The Primary Insurer did not disclaim its interest in the funds, and it requested that the court declare that several coverage defenses applied to the policy.[3]

On January 7, 2009, the district court granted ACL's motion to dismiss two of the coverage defenses, ruling that they were inapplicable; however, the court declined to dismiss the entirety of the Primary Insurer's requests for declaratory relief, concluding that the policy might exclude coverage of certain expenses under the punitive damages clause and the pollution exclusion clause.[4]

On March 24, 2010, the Excess Insurers filed an interpleader complaint seeking release from further liability under the excess policy upon deposit of the policy limit of $9 million into the court's registry. ACL opposed the Excess

---

[2] In a separate but related appeal, No. 09-30549, *Stephen Gabarick v. Laurin Maritime (America), Inc.*, ACL asserted that it was a tort claimant and not an additional insured under the primary policy. Given our disposition of this appeal, we do not address the impact, if any, of this assertion on the outcome of ACL's claim.

[3] Specifically, the Primary Insurer requested that the court declare that: (1) the DM-932 was not a covered vessel under the policy; (2) the losses caused as a result of a breach of seaworthiness of the vessel were not covered; (3) claims for punitive or exemplary damages were not covered; and (4) many of the claims were not covered as a result of a pollution exclusion clause.

[4] During oral argument, counsel for the Excess Insurers stated that the pollution exclusion clause was not a part of the primary policy; however, the record indicates that the Primary Insurer did, in fact, raise the pollution exclusion defense, and the district court refused to dismiss the request for declaratory relief with respect to the pollution exclusion clause. Thus, according to the record, the pollution exclusion issue remained pending in the district court after the January 7, 2009 ruling.

No. 10-30886

Insurers' motion for leave to deposit the policy limit with the court, arguing that the Excess Insurers should have to pay prejudgment interest on the interpleaded funds in order to be released from liability.  ACL argued that interest should be awarded because the Excess Insurers unreasonably delayed in depositing the funds with the court. ACL stated that "[h]ad the Excess Insurers deposited the $9 million policy limit in a timely manner, the interest would have been accrued for well over twelve months to the benefit of the claimants, rather than to the benefit of the Excess Insurers."

After hearing arguments on this issue, the district court concluded that the Excess Insurers should be required to pay prejudgment interest from January 7, 2009.  The court held that the rate to be applied was 3.5% and ordered the Excess Insurers to pay $495,369.86 in prejudgment interest.  The Excess Insurers timely filed an interlocutory appeal of this order under 28 U.S.C. § 1292(a)(3).

## II.  STANDARD OF REVIEW AND JURISDICTION

We have jurisdiction to hear this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(3) which gives this court jurisdiction to review "[i]nterlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." 28 U.S.C. § 1292(a)(3).  Here, the district court's order requires the Excess Insurers to pay almost $500,000 more than they contend they are liable to pay as compensation to the injured parties for the delay in depositing the funds with the court.  The district court's order affected a "liability"; therefore, we have jurisdiction.

Generally, the decision to award prejudgment interest is reviewed under an abuse of discretion standard. *Jauch v. Nautical Servs. Inc.*, 470 F.3d 207, 214 (5th Cir. 2006) (per curiam).  ACL argues that this standard applies; however, this issue requires the court to interpret the insurance contract to determine

4

No. 10-30886

whether the Excess Insurers' obligations under the contract have been triggered. Such a question of law is subject to de novo review. *Theriot v. United States*, 245 F.3d 388, 394 (5th Cir. 1998) (per curiam) ("Contract interpretation is a question of law, subject to de novo review.").

## III. DISCUSSION

The Excess Insurers argue that their liability was not triggered on January 7, 2009 because the primary policy was not exhausted at that time (or any time before they filed their interpleader action). Therefore, the Excess Insurers allege that the district court erred in holding them liable for prejudgment interest.

Because this is a case brought under maritime law, it is first necessary to determine whether state law or federal maritime law should be used to analyze whether the primary policy has been exhausted. Generally, "[s]tate law . . . governs the interpretation of marine insurance policies unless an available federal maritime rule controls the disputed issue." *Albany Ins. Co. v. Kieu*, 927 F.2d 882, 886 (5th Cir. 1991). Although this case was brought under federal admiralty jurisdiction, "[w]here . . . no federal law, legislative or judicial, relating to the question exists, the law of the state where the marine insurance contract was issued and delivered is the governing law." *Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*, 766 F.2d 195, 198 (5th Cir. 1985). The parties have not cited and we have not located any federal maritime rule that addresses the issue of exhaustion of a primary insurance policy[5]; therefore, we conclude that Louisiana

---

[5] Federal maritime law does provide that "prejudgment interest should be awarded in maritime collision cases, subject to a limited exception for 'peculiar' or 'exceptional' circumstances." *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 195 (1995). This general principle is inapplicable to these facts, however, because this case does not concern whether to award prejudgment interest to the injured party, but rather whether the insurer should have to pay prejudgment interest for its alleged failure to timely deposit the funds with the court.

No. 10-30886

law applies, as the insurance policy in this case was issued in Louisiana to DRD Towing, a Louisiana company. *See id.* at 198; *see also Kieu*, 927 F.2d at 886.

Under Louisiana law, "excess insurance . . . provide[s] supplemental coverage that picks up where [the insured's] primary coverage ends and thus provide[s] protection against catastrophic losses." *La. Safety Ass'n of Timbermen Self-Insurers Fund v. La. Ins. Guar. Ass'n*, 17 So. 3d 350, 359 (La. 2009) (emphasis omitted); *see also* JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 2.16 (2d ed. 2003) ("The insured may obtain additional coverage in the form of an excess policy which by its terms will only come into play once the limits of the primary policy have been exhausted."). Thus, "[t]he very nature of excess insurance coverage is such that a predetermined amount of underlying primary coverage must be paid before the excess coverage is activated." *Samuels v. State Farm Mut. Auto. Ins. Co.*, 939 So. 2d 1235, 1239 (La. 2006) (quoting *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 767 (La. 1994)). Because coverage is only triggered after the primary insurance limit has been exhausted, excess insurance "is generally available at a lesser cost than the primary policy since the risk of loss is less than for the primary insurer . . . ." APPLEMAN, *supra*, § 2.16.

At oral argument, ACL conceded that the primary policy was not exhausted by payment of judgments and settlements at the time the Excess Insurers filed their interpleader action. It argued instead that, once the Excess Insurers filed an interpleader, they "took the case out of the policy," making "irrelevant" the language of the excess policy requiring primary policy exhaustion to trigger the Excess Insurers' liability. This somewhat circular argument then continues with the notion that if the Excess Insurers were going to file an interpleader, they had to do so no later than the January 2009 district court ruling. Therefore, ACL concludes, the Excess Insurers unreasonably delayed in depositing their funds with the court by waiting over a year to file

No. 10-30886

their interpleader action and were unjustly enriched by reaping the time value of that money in the interim.

ACL relies on *Aetna Casualty & Surety Co. v. Hood*, No. 95-60152, 1995 WL 581567 (5th Cir. Aug. 24, 1995) (per curiam) (unpublished), to support its position. *Aetna Casualty & Surety Co.* mentions that, in evaluating whether interest should be awarded in an interpleader action, the court considers "(1) whether the stakeholder unreasonably delayed in instituting the action or depositing the fund with the court, (2) whether the stakeholder used the fund for his benefit and would be unjustly enriched at the expense of the claimants who have claim to the fund, and (3) whether the stakeholder eventually deposited the fund into the court's registry." 1995 WL 581567, at *2 (citing *Gelfgren v. Republic Nat. Life Ins. Co.*, 680 F.2d 79 (9th Cir. 1982)). However, the court in *Aetna Casualty & Surety Co.* did not explicitly adopt this three-factor test.

Even assuming that the three-factor test should be used, we note that the question of "unreasonable" delay and "unjust" enrichment cannot be divorced from the source of the Excess Insurers' obligations which, in turn, comes from the language of their excess policy. ACL is not entitled to rewrite the policy to place a burden on the Excess Insurers that they did not bargain for in their contract. As noted above, excess insurance policies are less expensive than primary policies precisely because the excess insurer carries less of a risk than a primary insurer. *Samuels*, 939 So. 2d at 1239; *see also* APPLEMAN, *supra*, § 2.16. Because the primary policy had not been exhausted as of the time the interpleader was filed, the Excess Insurers neither "unreasonably" delayed nor were "unjustly" enriched by not filing the interpleader earlier. We thus conclude that the district court erred in holding them liable for prejudgment interest on the interpleaded funds.

No. 10-30886

## IV.  CONCLUSION

For the foregoing reasons, we REVERSE the district court's order directing the Excess Insurers to pay prejudgment interest on the funds deposited with the court and REMAND for proceedings consistent with this opinion.