**REVISED OCTOBER 30, 2018**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

——————

No. 17-30805

——————

United States Court of Appeals
Fifth Circuit

**FILED**
August 29, 2018

Lyle W. Cayce
Clerk

SCF WAXLER MARINE, L.L.C.,

       Plaintiff

v.

ARIS T M/V,

       Defendant

----------------------------------

In re: In the Matter of the Complaint of Cenac Marine Services, L.L.C., as Owner and Operator of the M/V LORETTA CENAC, BARGE CTCO 338, BARGE CTCO 339, and BARGE CTCO BARGE 357B, for Exoneration From or Limitation of Liability

CENAC MARINE SERVICES, L.L.C., etc.

       Petitioner

VALERO REFINING - NEW ORLEANS, L.L.C.; MOTIVA ENTERPRISES, L.L.C.,

       Third Party Plaintiffs Claimants - Appellants

v.

CONTINENTAL INSURANCE COMPANY; AGCS MARINE INSURANCE COMPANY; NEW YORK MARINE AND GENERAL INSURANCE COMPANY; STONINGTON INSURANCE COMPANY; NATIONAL SPECIALTY INSURANCE COMPANY; LLOYD'S SYNDICATES,

No. 17-30805

Third Party Defendants - Appellees

v.

SHELL CHEMICAL, L.P.,

Claimant - Appellant

————————————

Appeals from the United States District Court
for the Eastern District of Louisiana

————————————

Before STEWART, Chief Judge, and JONES and ENGELHARDT, Circuit Judges.

CARL E. STEWART, Chief Judge:

A stream of litigation followed a marine accident that resulted in damages estimated to exceed $60 million. The underlying fault or liability for that accident is not at issue on appeal. Rather, Valero, Shell, and Motiva ask this court to resolve whether the excess insurers of one of the involved vessels may limit their liability to that of the insured vessel. On a partial motion for summary judgment, the district court held that the Protection and Indemnity policy covering the vessel has a *Crown Zellerbach* clause thereby permitting the excess insurers to limit their liability to that of the insured vessel.

Valero, Shell, and Motiva timely appealed, asserting that this court has jurisdiction to hear an appeal of that interlocutory order under 28 U.S.C. §1292(a)(3). Because we lack appellate jurisdiction, we DISMISS.

No. 17-30805

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 31, 2016, bulk carrier *Aris T* collided with a tank barge, a towing vessel, and two facility structures along the Mississippi River upriver from New Orleans.  Prior to the accident, the *Aris T* was proceeding upriver as two towing vessels, the *Elizabeth M. Robinson* and *Loretta G. Cenac*, were moving downriver toward their respective destinations. Both towing vessels were pushing ahead three loaded tank barges, each barge 300 feet long and 54 feet wide. Despite communications between the captains of each vessel about facilitating the *Loretta G. Cenac*'s attempted pass of the *Elizabeth M. Robinson*, an accident occurred after the *Aris T* struck the portside of an empty tank barge which in turn struck another tank barge. The barges were connected by the stern to the bow of towing vessel *SCF Vision* moored at a dock owned by Valero Refining – New Orleans ("Valero"). In the aftermath of this initial collision, the *Aris T*, still moving upriver, struck another towing vessel as well as multiple berths owned by Shell Chemical, L.P. ("Shell") and Motiva Enterprises ("Motiva"). Both tank barges, the facility dock, and the *SCF Vision* sustained damage.

On February 2, 2016, SCF Waxler Marine, LLC, owner and operator of damaged towing vessel *SCF Vision*, filed suit against the *Aris T* in the Eastern District of Louisiana. Soon thereafter, Valero, Shell, and Motiva also filed actions against the *Aris T*.  Seeking to limit its liability for damages resulting from the accident, the *Aris T* filed a Verified Complaint in Limitation under the Limitation of Liability Act (46 U.S.C. §§ 30501–12), arguing that it was not at fault for the accident.  The vessel most relevant to this appeal—the *Loretta G. Cenac* through its owner Cenac Marine Services, LLC ("Cenac")—similarly filed a Verified Complaint for Exoneration from or Limitation of Liability. The district court consolidated that action along with others related to the accident. The Exoneration Complaint sought declaratory relief from the district court

3

No. 17-30805

providing that Cenac was not liable or, if found liable, that its liability be limited to the value of Cenac's interest in the vessels involved—$14,602,365 (value of the vessels plus freight).

Louisiana's Direct Action Statute permits persons sustaining damages in accidents occurring in Louisiana to bring direct actions against insurers of the individual alleged to have caused the accident. LA. REV. STAT. ANN. 22:1269. Subject to a handful of exceptions not applicable here, a direct action may not be brought against the insurer alone. *See id.* at B(1)(a)-(f). On January 24, 2017, Valero, Shell, and Motiva exercised this right, impleading Cenac's Primary[1] and Excess[2] Insurers pursuant to Federal Rule of Civil Procedure 14. They claimed that the Excess Insurers, by virtue of Louisiana's Direct Action Statute, were liable to Valero, Shell, and Motiva for all damages sustained in the accident that were the fault of Cenac.

Valero, Shell, Motiva, and the Excess Insurers[3] then quarreled about whether the primary P&I policy, issued by the Primary Insurers and followed by all Excess Insurers, had language indicating that the insurers could limit their liability to that of the *Loretta G. Cenac.* That is, whether the P&I policy contains a "*Crown Zellerbach* clause." *See Crown Zellerbach Corp. v. Ingram Indus., Inc.* 783 F.2d 1296 (5th Cir. 1986) (en banc).

---

[1] Continental Insurance Company and AGCS Marine Insurance Company are Cenac's Primary insurers and provide a policy with $1 million in coverage. They will collectively be referred to as the Primary Insurers throughout this opinion.

[2] New York Marine and General Insurance Company and Stonington Insurance Company National Specialty Insurance Company ("First Excess Insurers") are Cenac's First Excess Insurers and provide policies with $29 million in coverage. Certain Underwriters at Lloyd's of London ("Second Excess Insurers") are Cenac's Second Excess Insurers and provide policies with $70 million in coverage. The First and Second Excess Insurers will be collectively referred to as the Excess Insurers throughout this opinion.

[3] The Primary Insurers did not oppose the partial motion for summary judgment. On appeal the Primary Insurers maintain a hands off approach. Their brief on appeal simply explains that they are unaffected by the outcome of this appeal because the limitation fund posted by Cenac exceeds the $1 million limit of their policy.

No. 17-30805

Valero, Motiva, and Shell filed a motion for partial summary judgment to settle the *Crown Zellerbach* issue.  On September 6, 2017, the district court sided with the Excess Insurers, denying the motion. More specifically, the district court concluded that the following provision satisfied *Crown Zellerbach's* requirements for an insurer to limit its liability:

> The Assurer hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or successors, all such loss and/or expense ***as the Assured shall as owners of the vessel named herein have become liable to pay and shall pay*** on account of the liabilities, risks, events and/or happenings herein set forth . . . .

Valero, Motiva, and Shell timely appealed on October 5, 2017. They assert that this court has jurisdiction to hear the appeal pursuant to 28 U.S.C. § 1292(a)(3).

## II.    JURISDICTION

The Excess Insurers contend that this court lacks jurisdiction to hear this interlocutory appeal under § 1292(a)(3) because the district court's Order and Reasons fails to "determin[e] the rights and liabilities of the parties."  We agree.

Although this court must satisfy itself of its own jurisdiction, Valero, Shell, and Motiva "'bear[] the burden of establishing this court's appellate jurisdiction over this appeal,' and there is no need to explore jurisdictional bases the appellant does not address." *Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 293 (5th Cir. 2007). This court's appellate jurisdiction is ordinarily limited to "final decisions of the district courts of the United

5

States."[4] 28 U.S.C. § 1291. Where permitted by statute, however, this court may hear interlocutory appeals satisfying certain requirements.

Relevant here, § 1292(a)(3) provides that appellate courts may entertain appeals from a district court's "[i]nterlocutory decrees . . . determining the rights and liabilities of the parties to admiralty cases." This circuit has construed the grant narrowly, hewing closely to the statute's "original purpose of permitting appeals from orders finally determining one party's liability to another and referring the action for a computation of damages." *Hollywood Marine, Inc. v. M/V Artie James*, 755 F.2d 414, 416 (5th Cir. 1985) (Rubin, J.). This court looks beyond the characterization of the ruling at issue and to the substance of what the lower court decided. *See Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 640 F.2d 560, 564 (5th Cir. 1981).

We have clarified that appellate jurisdiction is generally appropriate "whenever an order in an admiralty case dismisses a claim for relief on the merits." *Francis ex rel. Francis v. Forest Oil Corp.*, 798 F.2d 147, 149 (5th Cir. 1986) (per curiam). That is not to say that all claims (or rights and liabilities) of all parties must be determined before this court may invoke jurisdiction; rather, the heartland of this court's jurisdiction over an interlocutory appeal under § 1292(a)(3) is a conclusive determination of the rights and liabilities as to the claim on appeal. *See In re Complaint of Ingram Barge Co.*, 517 F.3d 246, 247 (5th Cir. 2008) ("Interpreting Section 1292(a)(3), we then held 'that in admiralty the liability of only one party need be determined for an interlocutory appeal to lie.'").

---

[4] Notably, one of Appellants' counsel conceded during oral arguments that there was nothing precluding this court's review of the ruling at issue after a final judgment.

No. 17-30805

For example, in *In re Ingram Towing Co.*, this court concluded that jurisdiction was not proper under § 1292(a)(3) where the district court did not determine liability or determine that a party could never bring a claim against the opposing party. 59 F.3d 513, 516–17 (5th Cir. 1995). In other words, this court lacked jurisdiction to hear an appeal of a district court's determination of "how and where the rights and liabilities would be determined." *Id.* at 517. Similarly in *Hollywood Marine*, this court held that an order finding that an insurer could not deny coverage under its policy did not provide appellate jurisdiction under § 1292(a)(3). 755 F.2d at 415–16. The *Hollywood* panel explained that jurisdiction under the statute is not appropriate where "the party whose contention is rejected remains in the litigation and the issue of its liability on the claim asserted remains to be finally resolved." *Id.* at 416. The decision did not "completely cut off" a party's ability to pursue the claim. *See Crews v. Arundel Corp.*, 386 F.2d 528, 530 (5th Cir. 1967). As this court plainly stated in *Hollywood*, § 1292(a)(3) offers no appellate jurisdiction where the district court's order "does not conclusively determine [a party's] 'rights and liabilities' as to the claim asserted." *Hollywood Marine, Inc.*, 755 F.2d at 416.

The principal dispute on the jurisdictional question in this case revolves around the applicability of this court's per curiam decision in *Bucher-Guyer AG v. M/V Incontrans Spirit*, 868 F.2d 734 (5th Cir. 1989) (per curiam). The Excess Insurers argue that the decision governs this case. First, they note that *Bucher-Guyer* is particularly instructive because the court held that we lack jurisdiction over an appeal of a district court's order stating that a statutory limitation on damages was applicable to a case. The court would still have to remand the case to the district court for a decision on whether the party entitled to a cap on its liability was actually liable. The Excess Insurers press that the same logic applies here. Valero, Shell, and Motiva distinguish *Bucher-Guyer* by arguing that the court's decision there did not concern the grant of a

7

substantive right, as here, and concerned a statute—the U.S. Carriage of Goods by Sea Act—that has no bearing on this case. Lastly, Valero relies on *Wallis v. Princess Cruises, Inc.*, where the Ninth Circuit held that a district court's conclusion concerning an insurance contract provision was appealable because, among other things, a holding to the contrary "would make interlocutory appeals impossible in many admiralty cases, and would do so in precisely those cases where appeals are most needed." 306 F.3d 827, 834 (9th Cir. 2002). In the same vein as their approach to *Bucher-Guyer*, Valero, Shell, and Motiva argue that this court has appellate jurisdiction because the district court, in denying their motion for partial summary judgment, granted the Excess Insurers rights that did not exist before that decision. In other words, the district court determined that Cenac could actually limit that liability based on an insurance contract clause. This determination was the final pronouncement on the extent of the Excess Insurers' liability in this case. That finality is not diminished, they urge, merely because the district court did not rule on the issue of liability. It is sufficient that the boundaries and limits of liability are now set in stone.

The Excess Insurers present a more persuasive view of this jurisdictional dispute. In *Bucher-Guyer*, this court held that the applicability of a $500 limitation on liability pursuant to the Carriage of Goods at Sea Act ("COGSA") was not a determination of a party's rights and liabilities for purposes of § 1292(a)(3). *Bucher-Guyer*, 868 F.2d at 735; *see also Hager v. Laurelton Welding Serv., Inc.*, 124 F. App'x 104, 106–07 (3d Cir. 2005) (unpublished) (Scirica, J.) (expressing agreement with Fifth Circuit approach to issue of "whether orders regarding limitations of damages are appealable under § 1292(a)(3)").

The fundamentals of *Bucher-Guyer* bear a striking resemblance to this case. There, the district court determined the boundaries of a party's liability—$500—based on the applicability of statutory language. Nevertheless, whether

the opposing party was entitled to anything and, if so, how much was still to be determined. In this case, the court decided the boundaries of a party's liability through determination of whether a contractual provision permitted them to do so. Whether Valero, Shell, and Motiva are legally permitted to recover anything from the Excess Insurers and, if so, how much remains to be determined. That question turns on the fault and or liability of the *Loretta G. Cenac*. Answering the important, but ancillary, question about the extent of the insurer's potential liability leaves the heart of the claim to be decided.

Valero, Shell, and Motiva attempt to dismiss the relevance of this decision because: (1) *Bucher-Guyer* does not address an insurance policy provision; (2) the statute at issue in that case—the U.S. Carriage of Goods Act—has no bearing on this case; and (3) here the district court did not find a statutory right to entitlement; rather, the focus was on a policy provision. Valero, Shell, and Motiva advance these arguments despite asking this court to instead rely on *Wallis*—a case that rejects the first two of their proffered distinguishing features.

In *Wallis*, the Ninth Circuit addressed whether that court had appellate jurisdiction over a district court's determination of the applicability of a contractual limitation of liability provision. In analyzing that issue, the Ninth Circuit explained that § 1292(a)(3) case law concerning the Carriage of Goods at Sea Act was instructive. 306 F.3d at 832–35.

Beyond not being helpful to Valero, Shell, and Motiva's attempt to distinguish *Bucher-Guyer*, *Wallis* expressly noted that the panel disagreed with and would not follow this court's interpretation of § 1292(a)(3). *Id.* at 833–34 (collecting cases from other circuits, including the Fifth Circuit, and stating "[w]e think that these other circuits have read § 1292(a)(3) too narrowly"). However, we stand by *Bucher-Guyer*. We also find persuasive the Eleventh

No. 17-30805

Circuit's reasoning in *Wajnstat v. Oceania Cruises, Inc.*, addressing a similar issue to the one we analyze here. 684 F.3d 1153 (11th Cir. 2012) (Carnes, J.).

In *Wajnstat*, the Eleventh Circuit analyzed whether § 1292(a)(3) permitted the appeal of a district court order determining whether a "limitation-of-liability provision in a cruise ticket contract was unenforceable and, as a result, inapplicable." *Id.* at 1155. Citing to this circuit's § 1292(a)(3) jurisprudence, the *Wajnstat* panel held that a district court's order denying a motion for partial summary judgment on a limitation-of-liability affirmative defense failed to meet the requirements of § 1292(a)(3). *Id.* at 1155–56. Announcing a rule that is eminently reasonable, the Eleventh Circuit explained as follows:

> If, as [the Fifth Circuit in] *Ford Motor Co.* held, a district court does not determine the "rights and liabilities of the parties" when it decides the applicability of a statutory limitation of liability, it also does not determine the "rights and liabilities of the parties" when it determines the applicability of a contractual limitation of liability.

*Id.* at 1155.

We find no compelling reason to distinguish between a district court's determination of a contractual entitlement rather than statutory entitlement to limit liability.[5] Neither decision is reviewable on appeal under § 1292(a)(3). We join the Eleventh Circuit in so holding.

---

[5] It is true that *Crown Zellerbach* refers to the "*right* to assert [a] policy defense." 783 F.2d at 1300 (emphasis added). And thus, according to Valero, Shell, and Motiva, determination of the applicability of such a clause determines the Excess Insurers' rights. This argument is essentially what one of Appellants' counsel referred to as their "plain language" argument. This point is much too fine. Valero, Shell, and Motiva's argument that the district court determined the Excess Insurers' "right" to limit liability falls in the face of the simple fact that, distilled to its essence, the determination is about ascertaining whether a party is merely permitted to limit its liability should the insured be found able to do so. *Crown Zellerbach* acknowledged that even those insurers who can qualify for limitation of liability under the issued policy must demonstrate "a right to it by," among other things,

No. 17-30805

If the district court had determined that the Excess Insurers via the shipowner's liability were not entitled to exoneration or limitation—requiring a determination of actual liability and having res judicata effect—jurisdiction would likely be appropriate. *See, e.g.*, *Republic of France v. United States*, 290 F.2d 395, 397 (5th Cir. 1961) (exercising appellate jurisdiction over denial of exoneration or limitation of liability where the district court concluded that appealing party was negligent and thus not entitled to limitation). Similarly, the court has expressed willingness to hear appeals where indemnity or coverage by an insurer of an insured is altogether denied. *Thibodeaux*, 487 F.3d at 292–93 n.1 ("An order denying indemnity completely settles the third-party's liability as to both the plaintiff and the principal defendant, as it establishes that the third party has no liability whatsoever."). These scenarios are not present here.

Shell, Motiva, and Valero also rely on this court's decision in *Gabarick v. Laurin Maritime (America), Inc.*, when asserting that this court has exercised jurisdiction over interlocutory admiralty appeals under § 1292(a)(3) where, as here, the trial court interpreted part of a marine insurance policy before any liability determinations had been made. 649 F.3d 417, 420–21 (5th Cir. 2011). Notwithstanding that errant characterization, *Gabarick* does not govern the jurisdictional inquiry in this case. In *Gabarick*, excess underwriters filed an interpleader complaint in the district court seeking release from further liability under the excess policy upon deposit of their policy limit of $9 million into the court's registry. Upon deposit of this amount, all claims by and against the excess underwriters would be dismissed. *Id*. at 420. The district court

---

having the vessel owner "establish that the casualty occurred without the [vessel] owner's privity and fault." *Id*. at 1303. In other words, irrespective of the applicability of a limitation of liability insurance provision, under Louisiana's Direct Action Statute, "there must be a legal liability on part of the assured for the insurer to have a direct action liability." *Id*. at 1301. Section 1292(a)(3) does not confer jurisdiction under these circumstances.

concluded, contrary to the underwriters' contention, that they owed prejudgment interest on their policy limit. *Id.* The district court's decision conclusively determined what amount the excess insurers would be required to submit to be dismissed from the action. *Id.* Accordingly, the panel concluded that the district court's decision requiring the insurers to deposit more than they believed appropriate before they would be dismissed from the case "affected a 'liability.'" *Id.* at 421. Suffice it to say that whatever the import of *Gabarick* for its jurisdictional analysis, that case simply does not guide us where the underlying district court order determines a party's entitlement to a contractual limitation of liability.[6]

## III.  CONCLUSION

For the foregoing reasons, this appeal is DISMISSED for lack of jurisdiction.

---

[6] Our conclusion is not changed by the Federal Rule of Appellate Procedure 28(j) letter filed by Motiva and Shell after oral argument. The cases cited, similar to *Gabarick*, conclusively decided how much a party was required to deposit to satisfy their legal or policy obligations. It is fair for Motiva and Shell to make clear that this court has exercised jurisdiction prior to a final determination of liability in a case. But, again, the question preceding the determination of liability matters. Where the question, as here, is whether a potentially liable party may limit his liability, §1292(a)(3) does not afford this court jurisdiction where the underlying claim for liability has not been adjudicated. Moreover, as Motiva and Shell ostensibly concede, the cited decisions did not meaningfully analyze the jurisdictional question. Stated simply, where the district court answers the question of whether a party may, under a contractual provision, limit his liability should the liability question be determined in his or his insured's favor, we will not exercise jurisdiction.